**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FUAD ZAMANOV,

           *Petitioner,*

v.

ERIC H. HOLDER, Jr., Attorney
General,

           *Respondent.*

No. 07-72340

Agency No.
A098-144-633

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 17, 2011*
San Francisco, California

Filed April 29, 2011

Before: J. Clifford Wallace, Ferdinand F. Fernandez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Rhoda Wilkinson Domingo, San Francisco, California, for the petitioner.

Gregory G. Katsas, Assistant Attorney General, Civil Division, Susan K. Houser, Senior Litigation Counsel, John J.W. Inkeles, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Newark, New Jersey, for the respondent.

**OPINION**

CLIFTON, Circuit Judge:

Fuad Zamanov petitions for review of a decision of the Board of Immigration Appeals adopting and affirming an immigration judge's denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ found that Zamanov was not credible due to inconsistencies between his testimony before an asylum officer and his subsequent written statements and testimony, which described additional incidents of persecution. Zamanov challenges the adverse credibility determination. We conclude that substantial evidence supported the IJ's conclusion that the additional incidents materially altered Zamanov's account of persecution in a way that cast doubt on his credibility. Accordingly, we deny the petition.

## I. Background

Zamanov is a native of the Soviet Union and citizen of Azerbaijan who was admitted to the United States in 2004 without valid entry documents. The Department of Homeland Security started removal proceedings against him, and Zamanov filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. The basis of Zamanov's claim was his alleged political persecution in Azerbaijan on account of his participation in the National Front or Popular Front Party, the main political opposition party in Azerbaijan. Zamanov stated that he began activity with the party in 1989 and that he attended meetings about once a month.

In his I-589 application filed in June 2004 and in his subsequent interview with the asylum officer, Zamanov alleged having been mistreated by the government on four separate occasions because of his political activities.

The first, according to his application and interview, occurred in 2000, when non-uniformed police officers pushed their way into his home, gagged and bound Zamanov and his family, and beat him. His brother went missing shortly afterwards. Zamanov was informed four days later that he had died of a heart attack.

Later, policemen arrested Zamanov at his workplace. He was taken to the office of a local official named Major Babaev, who demanded that he become an informant and threatened his life. When Zamanov refused, he was beaten by police officers and detained for several hours.

Zamanov subsequently obtained a tourist visa and entered the U.S. in 2000. He returned to Azerbaijan in February 2002 to protect his family from continuing harassment by government officials. Upon his return, he was again summoned to Major Babaev's office. Babaev threatened Zamanov that if he refused to sign a statement promising not to engage in political activities, he would be charged with possession of a gun and narcotics. After signing the statement, Zamanov was released. He was later told that his services as an informant were no longer needed but he would have to pay a monthly bribe of $200.

In March 2004 he was again taken to Major Babaev, who told him not to continue his political activities. Zamanov was told that his monthly payment would increase to $700 a month. Because he could not afford the payment and feared for his family's safety, Zamanov decided to leave Azerbaijan. On April 5, 2004, he drove to Moscow with his family and flew to Mexico City, then to Tijuana, where he paid a smuggler to transport him into the United States.

The asylum officer determined that Zamanov was not credible in material respects and was thus not eligible for asylum. The asylum officer noted that Zamanov claimed that he had worked on the 1998 presidential campaign in Azerbaijan, yet

he named people as candidates who were not in the race. Zamanov stated that the party's leader, Elchibay, was still in Azerbaijan in 2004, but Elchibay died in 2000.

Zamanov subsequently hired an attorney to help him with his asylum application. At the start of his merits hearing in immigration court, Zamanov submitted a second personal statement dated July 22, 2005. This statement referred to three separate incidents of mistreatment that Zamanov had not cited before the asylum officer.

In his supplemental declaration, Zamanov claimed that in 1996 he had been arrested for protesting what he believed to be the government's falsification of results from the presidential election. He helped distribute flyers for a demonstration which approximately 1,000 people attended. The police beat him and kicked him, forced him into a van, and took him to the police station and held him for a day.

Zamanov also claimed to have served as a poll watcher during the 2003 presidential election. After observing that officials at the polling station were passing out pre-marked ballots, Zamanov attempted to complain to officials about the ballots. The police told him that he was disturbing the peace. Zamanov called party headquarters to report the incident. Western observers subsequently came to the polling station. Zamanov approached them and told them about the ballots. He was apprehended by the police and taken to the police station, beaten, held for eight hours, then released.

Finally, Zamanov stated that in October 2003 he participated in a demonstration to protest the presidential election. He was again attacked by the police, beaten, and taken to the police station and held for three days before being released.

In immigration court, Zamanov testified regarding all seven of the incidents of persecution described above, including those submitted in his supplemental declaration. When the

immigration judge ("IJ") asked him why he had not brought up the 1996 and 2003 arrests before the asylum officer, though he had been given an opportunity to do so, Zamanov said that the man who helped him prepare the asylum application, an acquaintance who was not an attorney, had not included these incidents in the I-589 application. The acquaintance told Zamanov that he should not testify to anything that was not in the written application. Zamanov maintained that he had been candid with the asylum officer even though he did not mention the 1996 and 2003 incidents. "I testified about all my writing, whatever he hadn't written down I didn't talk about that."

The IJ concluded that Zamanov was not credible. In particular, in an October 27, 2005 decision, the IJ noted Zamanov's failure to mention in the asylum interview the three instances of mistreatment he described in his supplemental declaration: being beaten and arrested at the 1996 demonstration; being arrested while serving as a poll watcher in 2003; and being mistreated following the rally in 2003. The IJ described these as material omissions. The IJ found Zamanov's explanation for his failure to testify about these incidents before the asylum officer to be "completely inadequate," stating that Zamanov "knew that he was not telling his complete story. He was asked whether there were any important events which he was not testifying to, and he said that there were not." On appeal, the BIA adopted and affirmed the decision of the IJ.

## II.   Discussion

An adverse credibility determination is reviewed under the substantial evidence standard. *See Singh-Kaur v. INS*, 183 F.3d 1147, 1149-50 (9th Cir. 1999); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). When an IJ provides a specific reason for an adverse credibility finding, "her judgment merits deference as long as (1) 'the reasoning employed by the IJ is [not] fatally flawed,' and (2) the reason is 'substantial and bear[s] a legitimate nexus to the finding.' " *Wang v. INS*, 352

F.3d 1250, 1258 (9th Cir. 2003). The IJ's reasons for finding Zamanov not credible were substantial, adequately reasoned, and supported by evidence in the record.

**[1]** While "minor inconsistencies" that "reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding,"[1] *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1998), inconsistencies regarding events that form the basis of the asylum claim are sufficient to support an adverse credibility determination.[2] *See Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990). Testimony about the events leading up to the petitioner's departure, or about the circumstances that led to the persecution, go to the "heart of the claim." *See Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001) (testimony as to the number of times applicant was arrested before his departure went to the heart of the claim); *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (details regarding the event that allegedly spurred the persecution).

**[2]** Material alterations in the applicant's account of persecution are sufficient to support an adverse credibility finding. *See Ceballos-Castillo*, 904 F.2d at 520. We have found a material alteration where an asylum applicant presented substantially different accounts of mistreatment in successive

---

[1]Minor inconsistencies may include, for example, small discrepancies in dates attributable to language problems or typographical errors, or a failure to remember non-material, trivial details only incidentally related to the claim of persecution. *See Kaur v. Gonzales*, 418 F.3d 1061, 1064-65 (9th Cir. 2005); *Wang v. Ashcroft*, 341 F.3d 1015, 1022 (9th Cir. 2003).

[2]The REAL ID Act, passed in 2005, changed the standard governing adverse credibility determinations. Under REAL ID, "inconsistencies no longer need to 'go to the heart' of the petitioner's claim to form the basis of an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010); 8 U.S.C. § 1158(b)(1)(B)(iii). Because Zamanov filed his asylum application prior to May 11, 2005, his case is governed by pre-REAL ID case law. *See, e.g.*, *Sinha v. Holder*, 564 F.3d 1015, 1021 n. 3 (9th Cir. 2009).

asylum petitions, or changed the basis of his claim of political persecution between his asylum application and subsequent testimony. *See Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir. 2001); *de Leon-Barrios v. INS*, 116 F.3d 391, 393-94 (9th Cir. 1997); *Ceballos-Castillo*, 904 F.2d at 520.

**[3]** The incidents of arrest and mistreatment that Zamanov cited in the supplemental declaration after the asylum interview were not minor, collateral details, as Zamanov claimed. Instead, these events — three arrests for participating in anti-government demonstrations and election monitoring — went to the core of his alleged fear of political persecution. *See Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006) ("An inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled.") With these incidents, Zamanov materially altered his entire story in a way that cast doubt on his credibility. *See Kaur*, 418 F.3d at 1065-66.

**[4]** Zamanov's supplemental declaration and his testimony before the IJ tell a much different — and more compelling — story of persecution than his initial application and testimony before the asylum officer. As Zamanov pointed out, we have held that a mere lack of detail in the initial asylum application that the applicant later clarifies at the immigration hearing cannot serve as a basis for an adverse credibility finding. *See Smolniakova v. Gonzales*, 422 F.3d 1037 (9th Cir. 2005).[3] Here, however, Zamanov did not merely elaborate on events that had previously been referenced. While Zamanov's earlier story cited only the police break-in to his home and Major

---

[3]In *Smolniakova*, we held that the asylum seeker's initial application, which stated that she was "mistreated and threatened" several times, and her testimony at the merits hearing, in which she gave specific examples of her persecution in Russia, were not inconsistent "simply because she initially failed to describe all prior incidents of mistreatment and persecution." *Smolniakova*, 422 F.3d at 1045; *see also Akinmade v. INS*, 196 F.3d 951, 956-57 (9th Cir. 1999); *Aguilera-Cota v. INS*, 914 F.2d 1375, 1382 (9th Cir. 1990).

Babaev's threats and extortion as evidence of persecution, the additions described his activities serving as a poll watcher and protesting the government's alleged falsification of election results. These are quintessential acts of political protest. It was not unreasonable for the IJ to be suspicious as to why Zamanov brought up these incidents, which would have added great weight to his claim of political persecution, only after his unsuccessful appearance before the asylum officer.

**[5]** The IJ clearly identified all the bases of the adverse credibility finding and offered a "specific, cogent" explanation. *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir. 1994). The IJ considered and addressed, and ultimately rejected, Zamanov's explanation for omitting the 1996 and 2003 incidents — that he had been told by the man who prepared his asylum application that he should not mention events that were not in the written application. Zamanov's explanation for filing the supplemental declaration — that his new attorney urged him to correct his earlier omissions — is plausible. However, the record does not compel the finding that the IJ's unwillingness to believe this explanation, in light of the importance of the omitted incidents to his asylum claim, was erroneous. *See Pal v. INS*, 204 F.3d 935, 938 (9th Cir. 2000). Moreover, because Zamonov would necessarily have been aware of the 1996 and 2003 incidents when he appeared before the asylum officer, if they had in fact occurred, it was not unreasonable for the IJ to conclude that Zamanov was not being candid when he told that officer that he had nothing to add to his asylum claim.

## III.  Conclusion

**[6]** Substantial evidence supported the immigration judge's conclusion that the additional incidents Zamanov described in his supplemental declaration materially altered his account of persecution and created inconsistencies in his testimony that cast doubt on his credibility.

**PETITION DENIED**.