**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2873
_____

CHUNG-HUA CHEN, a/k/a
Zhen Hua Chen,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-848-835)
Immigration Judge: Robert P. Owens
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 10, 2013

Before: SCIRICA, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*

(Opinion Filed:  July 24, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Petitioner Chung-Hua Chen filed this Petition for Review of the decision of the Board of Immigration Appeals ("BIA") dismissing his applications for political asylum, withholding of removal, and protection under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Because substantial evidence supported the Immigration Judge's finding that petitioner was not credible, we will deny the Petition for Review.

## I.

Petitioner is a native and citizen of the People's Republic of China. On December 31, 1993, petitioner arrived in Miami, Florida. He was placed in deportation proceedings as an alien not in possession of valid travel and entry documents. Petitioner filed his first application for asylum on May 20, 1994, based on persecution under China's family planning policies. On October 25, 1994, petitioner was ordered excluded and deported *in absentia* because he and his counsel failed to appear at a hearing before the Immigration Judge ("IJ"). In December 1998, petitioner filed a motion to reopen and reconsider through new counsel. The IJ denied this motion and reaffirmed that petitioner had abandoned his claims to relief. Petitioner filed his second application for asylum on May 16, 2008, also based on persecution under China's family planning policies. Petitioner then filed a joint motion to reopen the case, which the IJ granted on June 18, 2008. On August 7, 2009, petitioner submitted an Affidavit of New Circumstances explaining that he was seeking asylum because, as a recent convert to Christianity, he feared persecution in China on the basis of his religion. During the 2009 hearing, counsel for petitioner

2

stated that petitioner had decided to drop his family-planning claim and to instead seek asylum on the basis of his religious beliefs.

The IJ issued its written decision on August 11, 2010, finding that petitioner was not credible, denying his applications for relief, and ordering him removed to China. The IJ noted that the versions of events told in petitioner's first and second asylum applications were inconsistent with one another and with the versions told in petitioner's Pre-Hearing Brief, Supplemental Declaration, and Affidavit of New Circumstances. In total, the IJ explained that

> many crucial aspects of the [petitioner's] story changed over these five versions: the dates of his marriage and his son's birth; the number of his wife's pregnancies and whether there was a forced abortion; whether he and his wife were warned about the insertion of an IUD [intrauterine device] or sterilization; the month when officials came for [his wife] Bi Ying to insert the IUD; whether officials were aware that the [petitioner] and his wife had secretly removed the IUD; whether the [petitioner] and his family fled to the mountains; the date he was last present in China, which still does not fit the timeline created by his statements and documents in the record; whether he was beaten and arrested by officials; whether his wife was at home when he was arrested; and whether the [petitioner] fears being sterilized.

The IJ also considered aspects of petitioner's religious-beliefs claim implausible and found that petitioner had failed to explain the inconsistencies, omissions, and implausible aspects of his testimony and submissions.

The BIA affirmed the findings of the IJ and dismissed petitioner's appeal on June 5, 2012. The BIA found the IJ properly arrived at an adverse credibility determination and that petitioner had failed to meaningfully address the IJ's credibility concerns. Since the BIA found petitioner did not satisfy his burden of establishing a credible claim for asylum, the BIA also determined that petitioner could not satisfy his higher burden of

proof for withholding of removal. Lastly, the BIA affirmed the IJ's decision to deny

petitioner's application for protection under the CAT because petitioner failed to show

that he would more likely than not be tortured by Chinese authorities if he were to return

to China.

Petitioner timely filed this Petition for Review.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. We

review the BIA's factual findings for substantial evidence, and we review the BIA's legal

determinations *de novo*, subject to principles of *Chevron* deference. *Briseno-Flores v.

Att'y Gen.*, 492 F.3d 226, 228 (3d Cir. 2007) (citing *Chevron v. Natural Res. Def.

Council*, 467 U.S. 837, 844 (1984)). "Adverse credibility determinations are factual

findings subject to substantial evidence review." *Zheng v. Gonzales*, 417 F.3d 379, 381

(3d Cir. 2005).[1]

---

[1] Under the REAL ID Act of 2005,

> [c]onsidering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

"The 'final order' to be reviewed is usually that of the Board of Immigration Appeals, but when the BIA simply states 'that it affirms the IJ's decision for the reasons set forth in that decision, . . . the IJ's opinion effectively becomes the BIA's, and, accordingly, a court must review the IJ's decision." *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005) (alteration in original) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001)).

"Ordinarily, we will affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. This deferential standard dictates that the IJ's findings 'must be upheld unless the evidence not only supports a contrary conclusion, but compels it.'" *Id.* (citation omitted) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001)). "Although we generally defer to the IJ's inferences, 'deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003) (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 162 (3d Cir. 1998)). We review due process claims *de novo*. *Chong v. Dist. Dir., INS*, 264 F.3d 378, 386 (3d Cir. 2001).

III.

Petitioner contends the IJ's adverse credibility determination was not supported by substantial evidence because (A) petitioner was prejudiced by the conduct of counsel who represented him in his first application for asylum, (B) the IJ erroneously relied upon

8 U.S.C. § 1158(b)(1)(B)(iii). It is undisputed that the REAL ID Act applies to petitioner's current asylum application.

5

minor inconsistencies that were reasonably explained by petitioner, and (C) the IJ did not address petitioner's religious-beliefs claim separately from his family-planning claim and improperly relied on conjecture. We will address each of petitioner's arguments in turn.

A.

Petitioner contends that his prior counsel provided him with ineffective assistance in the submission of his first application for asylum; therefore, he asserts, we should not permit any inconsistencies between that application and subsequent applications and submissions to affect his credibility.

But even if we ignore discrepancies between the first application and later submissions, we agree with the IJ that "substantial and material aspects of [petitioner's] claim . . . were missing from his original application."[2] The IJ found that before petitioner allowed his lawyer to submit his first application for asylum, petitioner should have noticed that the application omitted his wife's second pregnancy and forced abortion. The IJ also found that ineffective assistance of counsel would "not account for the discrepancies in [petitioner's] second application and subsequent statements," for which petitioner had obtained new counsel. For instance, neither petitioner's first application nor his second application mentioned his claimed beating, arrest, and detention by Chinese officials. These events were mentioned for the first time in petitioner's Pre-

---

[2] Petitioner's brief asserts that because petitioner testified that he did not recognize his first application for asylum, petitioner may not have known what his attorney wrote on it. But petitioner only testified that he did not remember the first application for asylum, explaining that "[i]t's been [sic] long time." A.R. 194. During the hearing, petitioner did not contend that he did not help write or approve of the first application or that its contents were fabricated. Petitioner also testified that his handwriting and signature were on the application.

Hearing Brief.

We agree with the IJ's analysis. Because the aforementioned omissions were not attributable to any ineffective assistance of counsel, it was appropriate for the IJ to consider them in arriving at the adverse credibility determination.[3]

B.

Alternatively, petitioner argues that any inconsistencies in his testimony and submissions were minor and did not form an adequate basis for an adverse credibility ruling. We disagree both with petitioner's legal assertion that the IJ may not consider minor inconsistencies and with petitioner's factual assertion that the inconsistencies on which the IJ relied were minor.

Under the REAL ID Act, a trier of fact may, considering the totality of the circumstances, base a credibility determination on "any inaccuracies or falsehoods . . . , without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Lin v. Mukasey*, 534 F.3d

---

[3] In its brief, the Government argues that petitioner has not complied with the necessary procedures for raising an ineffective assistance of counsel claim. To assert ineffective assistance of counsel in a removal proceeding, an alien must follow certain procedural formalities and show he was prejudiced by counsel. *See Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988) (detailing the procedural requirements to assert an ineffective assistance of counsel claim); *Fadiga v. Att'y Gen.*, 488 F.3d 142, 159 (3d Cir. 2007) ("[A]n alien claiming ineffective assistance of counsel in removal proceedings must, in addition to showing that his lawyer committed unprofessional errors, show that there was a 'reasonable likelihood that the result would have been different if the error[s] . . . had not occurred.'" (second and third alteration in original) (quoting *United States v. Charleswell*, 456 F.3d 347, 362 (3d Cir. 2006))). Because we find the IJ's credibility determination supported by substantial evidence, and not attributable to any ineffective assistance of counsel, we need not consider whether petitioner properly raised an ineffective assistance of counsel claim.

162, 167 (2d Cir. 2008) ("[A]n IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." (quoting § 1158(b)(1)(B)(iii))).

The omissions apparent in petitioner's early applications for asylum—e.g., the facts of petitioner's arrest and beating and his wife's forced abortion—provide strong support for the IJ's adverse credibility determination. In fact, we faced a similar situation in the pre-REAL ID Act case of *Xie v. Ashcroft*, 359 F.3d 239 (3d Cir. 2004). In *Xie*, an alien sought asylum on the basis of China's family-planning policies but failed to mention in his written asylum application that his wife had been forcibly sterilized. *Id.* at 243. We found that the IJ's adverse credibility determination was supported by substantial evidence, noting that "[i]f indeed [the petitioner's] wife had been sterilized, this would be such a traumatic event in both his and his wife's life that [it would be] implausible and incredible that this . . . would not have been included in the I-589 application." *Id.* (quotation omitted); *see also Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011) (finding material alterations in applicant's account of persecution, including when applicant presents different accounts of mistreatment in successive asylum petitions, sufficient to support an adverse credibility determination in a pre-REAL ID Act case).

Petitioner also contends the IJ did not consider his explanations for his inconsistencies. In particular, petitioner argues that he added the facts of his arrest and beating to his Pre-Hearing Brief in order to address the new burden created by *In re J-S-*, 24 I. & N. Dec. 520 (Att'y Gen. 2008). But although petitioner's explanation makes clear

8

why he added these facts to his submission, it still does not clarify why he omitted such relevant and likely memorable events in his first and second applications. In short, his explanation would not compel a reasonable factfinder to find that he is credible.[4]

## C.

Petitioner argues the IJ failed to separately address his religious-beliefs claim from his family-planning claim. With respect to his religious-beliefs claim, petitioner takes issue with the IJ's conclusions that (1) it is implausible that petitioner would have tried to persuade his wife to attend an underground church and spread the gospel in China, since he knew it could result in his wife's persecution; and (2) it is implausible that petitioner would not have told his pastor or other members of his church, including five witnesses from China and Taiwan who attended his merits hearing, about his wife's arrest by Chinese authorities for practicing Christianity.

We agree with petitioner that the IJ's first finding of implausibility was based on improper speculation. *See Zheng*, 417 F.3d at 382 (explaining a credibility determination based on implausibility must be grounded in the record to avoid speculation and conjecture). The IJ's assumption that petitioner would necessarily prioritize his wife's safety over his faith was not grounded in the record; indeed, it contradicts petitioner's statements that he fears persecution upon return to China because he intends to continue practicing Christianity there.

---

[4] Petitioner's brief also suggests that petitioner's attorney did not know the requirements for an asylum claim and may have failed to initially question petitioner regarding his arrest. But as the BIA explained, "[b]elated statements in the appeal brief that speculate reasons" why Petitioner did not mention his arrest and beating "are not evidence."

But the IJ's second finding of implausibility was grounded in the record. Petitioner testified that he and his Chinese acquaintances "all talk about" the problems that would be created by practicing Christianity in China. A.R. 207. And when asked why he only told one person about his wife's arrest, petitioner explained that he chose his confidant "because he's my friend," but then also stated that the members of his church were his "friends." *Id.* This testimony was sufficient for the IJ to conclude that it was implausible that petitioner would not have told his pastor or any of the other witnesses about his wife's arrest in China for practicing Christianity.

Additionally, whether or not we are "troubled by some of the reasons underlying the IJ's adverse credibility finding[,] . . . we are bound to uphold the IJ's decision if it is supported by substantial evidence, and may do so even if we reject some of its bases." *Zheng*, 417 F.3d at 382. In finding that petitioner was not credible, the IJ did not rely solely on the fact that certain aspects of petitioner's testimony were implausible, but also on petitioner's inconsistencies with respect to his family-planning claim. As previously stated, the REAL ID Act permitted the IJ to consider any inconsistency in petitioner's statements and submissions regardless of whether it went to the heart of his claim for asylum. We agree with the BIA that in this case,

> [w]here . . . discrepancies went to the heart of one aspect of the asylum claim, such discrepancies can undermine the credibility of another aspect of the applicant's asylum claim, which here the applicant has based on his religious conversion during the pendency of his exclusion proceedings and which was wholly dependent on the veracity of his claim that he will continue to practice Christianity and convert others in China at the risk of persecution . . . .

Given the inconsistencies in petitioner's submissions with respect to his family-

10

planning claim, and the implausibility of one aspect of his religious-beliefs claim, a reasonable factfinder would not be compelled to find petitioner credible. Therefore, the IJ acted within its discretion in determining that, under the totality of the circumstances, petitioner was not credible.

IV.

We find the IJ's adverse credibility determination supported by substantial evidence. As such, petitioner's claim for withholding of removal is foreclosed. *See Chen v. Att'y Gen.*, 676 F.3d 112, 117 (3d Cir. 2011) (explaining that withholding of removal carries a higher burden of proof than asylum). We also find that petitioner has not satisfied his burden of showing that he would more likely than not be tortured by Chinese authorities if he were to return to China. *See Zheng*, 417 F.3d at 383 (finding that an adverse credibility determination on petitioner's asylum claim precluded CAT claim based on the same factual circumstances).

For the foregoing reasons, we will deny the Petition for Review.