**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YANG XIANG, | No. 17-73351 |
| Petitioner, | Agency No. A205-752-951 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 25, 2019
Seattle, Washington

Before: CLIFTON, IKUTA, and BENNETT, Circuit Judges.

Yang Xiang appeals the Board of Immigration Appeals (BIA) order

affirming the immigration judge's denial of eligibility for asylum and withholding

of removal, and denial of protection under the Convention Against Torture (CAT).

We have jurisdiction under 8 U.S.C. § 1252(a)(1).

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Any error by the BIA in misconstruing our prior remand order as covering only Xiang's CAT claim was harmless, because the IJ reconsidered all of Xiang's claims and denied them. The BIA expressly or implicitly affirmed the IJ's rulings on CAT, asylum, and withholding of removal. Thus, another remand would be futile. *See, e.g.*, *Tejeda-Mata v. INS*, 626 F.2d 721, 726–27 (9th Cir. 1980).

The BIA did not err by affirming the IJ's denial of asylum and withholding of removal. The IJ's determination that Xiang was not credible was supported by multiple implausibilities and internal inconsistencies in Xiang's testimony regarding the legality of his business. *See* 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1252(b)(4)(B); *Rizk v. Holder*, 629 F.3d 1083, 1091 (9th Cir. 2011). For instance, Xiang's claim that his business was legal was inconsistent with his own testimony that he continued operating his business for several months after the Chinese government had made it illegal. His claim was also inconsistent with evidence in the record indicating that his business model was substantially the same as the fundraising arrangements that China had outlawed for several years. Because even one material inconsistency is enough to support an adverse credibility determination, the IJ's adverse credibility finding was supported by substantial evidence. *See Rizk*, 629 F.3d at 1088.

2

The IJ did not err in giving little weight to Xiang's corroborating evidence because Xiang's testimony and initial submissions were not "otherwise credible." 8 U.S.C. § 1158(b)(1)(B)(ii); *see Yali Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017). Moreover, the IJ was entitled to give little weight to Yuan Yuan's letters both because they were hearsay, *see Gu v. Gonzales*, 454 F.3d 1014, 1021 (9th Cir. 2006), and because of the material omissions in Yuan Yuan's first letter, where she neglected to mention that she had been arrested, detained and tortured, as stated in her second letter. *See Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011).

Without Xiang's credible testimony, the record did not establish that he was harmed on account of his religion. Thus, the BIA did not err in denying his asylum and withholding of removal claims.[1]

The BIA did not err by affirming the IJ's denial of protection under CAT. Xiang had the burden of establishing that he would "more likely than not" be tortured if removed to China. 8 C.F.R. § 208.16(c)(2). The IJ's adverse credibility finding, discussed above, also applied to Xiang's testimony with respect to his

---

[1] The BIA did not address questions regarding whether Xiang's application was timely or whether the serious non-political crime bar under 8 U.S.C. § 1231(b)(3)(B)(iii) is applicable, and so we do not reach these issues. *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006); *INS v. Orlando Ventura*, 537 U.S. 12, 18 (2002).

CAT claim. *See Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010). The IJ was entitled to accord little weight to the letters submitted by Xiang because their authors were not available for cross-examination. *Gu*, 454 F.3d at 1021. Moreover, the IJ found inconsistencies in the two letters from Yuan Yuan and between the letter from Xiang's ex-wife and Xiang's own testimony regarding his former classmate. Finally, the IJ could conclude that the letter from Xiang's mother, if credited, established only that the police were looking for Xiang, not that Xiang had a heightened risk of torture.

The record did not compel the conclusion that Xiang faces an increased threat of torture as an overseas fugitive accused of financial crimes. The country report did not establish that Xiang is within a category at heightened risk of torture, because Xiang is not a political or religious dissident, a lawyer, or a targeted ethnic or spiritual minority. Nor is Xiang wanted for a crime identified in the 2014 Human Rights Watch report, which stated that "torture is particularly common and severe in murder cases, triad-related crimes, and corruption cases." Although a news report in the record stated that China is pursuing fugitives wanted for "economic corruption," the report did not indicate that such criminals are at a heightened risk of torture, even assuming that Chinese officials would consider Xiang's alleged offense to constitute economic corruption.

In sum, although background evidence in the record showed that torture is common in Chinese prisons, this did not compel the conclusion that Xiang in particular would more likely than not be tortured if he was removed to China and arrested. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008); *Almaghzar v. Gonzales*, 457 F.3d 915, 922–23 (9th Cir. 2006).

**AFFIRMED.**