FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HONG LI,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 18-70943

Agency No.
A201-040-487

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 21, 2020
Honolulu, Hawaii

Filed September 21, 2021

Before: J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

## Immigration

Denying Hong Li's petition for review of a decision of the Board of Immigration Appeals, the panel held that substantial evidence supported the denial of asylum and related relief on adverse credibility grounds.

Considering the totality of the circumstances, the panel concluded that two of the Board's four identified bases for its adverse credibility determination were supported by substantial evidence, and two were not. First, the panel concluded that the transcript did not support the Board's determination that Li testified inconsistently regarding her treatment while in jail. Second, the panel concluded that Li's omission regarding her husband's employment was not a proper basis for the adverse credibility determination, given that the omission might be a collateral or ancillary omission that, under the totality of the circumstances, had no tendency to suggest Li fabricated her claim, the omitted information concerned adverse consequences for a third party—Li's husband—and Li did not volunteer the information to bolster her claim, but rather the immigration judge elicited Li's brief responses during cross-examination.

The panel concluded that the Board's final two identified grounds were supported by substantial evidence. First, observing that under the REAL ID Act credibility findings no longer need to go to the heart of an applicant's claim, the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel concluded that the Board appropriately relied upon Li's submission of false information in her asylum application regarding her arrest record to find her not credible. The panel wrote that the Board was not compelled to accept Li's explanation for the discrepancy—that she was reasonably mistaken about the difference between an arrest and a conviction—given that the explanation was implausible, and particularly because she was assisted by counsel. Next, the panel concluded that under the totality of the circumstances, Li's submission of false information in her visa application regarding her employment also supported the Board's adverse credibility determination. The panel explained that while this factor alone might not support an adverse credibility finding, it was an appropriate factor to consider here, where Li made no attempt during her hearing to explain why she needed to provide the false information.

**COUNSEL**

Albert S. Chow (argued), Lin & Chow, Monterey Park, California, for Petitioner.

Andrew B. Insenga (argued), Trial Attorney; Jonathan Robbins, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WALLACE, Circuit Judge:

Petitioner Hong Li seeks review of the decision of the Board of Immigration Appeals (Board), which affirmed the Immigration Judge's (IJ) denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) on adverse credibility grounds. We have jurisdiction pursuant to 8 U.S.C. § 1252. Reviewing the Board's findings for substantial evidence, *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010), we deny the petition for review.

I.

Li is a native and citizen of the People's Republic of China. She entered the United States in July 2010 on a non-immigrant business visa with permission to remain in the country until January 2011. In February 2011, after Li's visa expired, the Department of Homeland Security served Li with a Notice to Appear in immigration court, charging her with removability. Li conceded she was removable and requested asylum, withholding of removal, and CAT relief.

In Li's asylum application, which she signed as true before the IJ while represented by counsel, she claimed that she was persecuted because of her membership in a house church that is not registered with the Chinese government. In March 2010, when Li and other church members met for a house church meeting, the police arrived and arrested Li and the others for an illegal gathering. Li stated that a police officer interrogated her, accused her of wanting to overthrow the Chinese government, and slapped her twice and kicked her.

Li first appeared before the IJ in 2011. After various delays, the IJ heard Li's testimony six years later in April 2017. At this hearing, the government informed the IJ that it had discovered Li's undisclosed 2013 arrest record for prostitution in Washington.

During the hearing, Li testified about her treatment in jail in China, her husband's employment and termination, her asylum application, and her visa application. For example, Li asserted on direct examination that "they did not allow me to eat meals" for four days while she was in jail, which she said resulted in a stomach disease. During cross-examination, the government asked about the denial of food, and Li responded, "They gave me something, but I only ate something the third day in the morning, a little bit of porridge. The fellow prisoners in the cell, they did not allow me to eat." The government asked why Li said she was not given food, and Li stated that "[t]hey did give me food, but it's the other two fellow prisoners, they did not let me eat." When the IJ asked why Li did not testify as such on direct examination, Li answered, "[W]hat I meant was, the fellow inmates did not let me eat, not that they did not give me food," and she explained that "[t]hat's what I meant to say. Maybe I did not express it well."

The IJ asked if Li's husband had ever lost his job, and Li answered that her husband had been fired from his job as a teacher. The IJ asked why Li's husband had lost his job, and Li answered, "The school claims that he had collusion with the—or contact with the evil religion, so the school dismissed him." The IJ asked what her husband now does for work, and Li replied that he is a truck driver. When the IJ asked Li why her husband's letter of support did not mention that he was fired because of Li's religious activities,

Li replied that she did not know what her husband wrote and did not read the letter until it arrived in the mail from China.

The IJ also questioned Li about her submission of false information in her asylum application. For example, Li answered "No" in response to the application's question "Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States?" When the IJ asked Li why she did not disclose the 2013 arrest, Li replied that the judge and her attorney in the criminal proceedings told her that the charge would be dismissed and that there would be no criminal record, which she interpreted as meaning that she was not a "convicted person" or a "criminal person." The IJ highlighted that the question was broader and encompassed arrests as well as convictions, and Li repeated the same explanation for her failure to disclose the arrest.

Finally, Li answered questions about false information in her visa application. In her visa application, Li stated that she worked as a treasurer for a company that produces wine. After being questioned by the IJ and the government, Li conceded during cross-examination that the information she provided in her visa application regarding her previous work experience at the wine company and her role for the company were false. Li did not assert that the false information was necessary to escape persecution in China.

The IJ denied Li's application based on an adverse credibility determination. The IJ cited numerous reasons for the adverse credibility determination, including but not limited to: the discrepancies relating to Li's treatment in jail, her husband's termination, the false information she provided in her visa application, and the false information she provided in her asylum application. The Board affirmed

the IJ's adverse credibility determination and cited these discrepancies for its decision.

The Board also upheld the IJ's determination that, even if Li were credible, she did not establish her eligibility for asylum on the merits of her claim because she did not show that the harm she suffered in China rose to the level of past persecution.

## II.

First, it bears calling attention to the pivotal effect of the REAL ID Act on immigration proceedings and our review, especially as some parties continue to cite pre-enactment case law that the REAL ID Act made obsolete. Ultimately, the REAL ID Act expanded the appropriate bases of an IJ's adverse credibility determination.

For applications for asylum, withholding of removal, and CAT relief made on or after May 11, 2005, the REAL ID Act created the following new standards governing adverse credibility determinations:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency,*

> *inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

Pub. L. No. 109–13, Div. B, §§ 101(a)(3), 101(c), 101(d), 119 Stat. 231, 303–04 (2005) (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii),    1231(b)(3)(C),    1229a(c)(4)(C)) (emphasis added).  On this point alone, the REAL ID Act is a watershed statute.

While we had held prior to the REAL ID Act that inconsistencies forming the basis of an adverse credibility determination should go to the heart of a petitioner's claim, "under the REAL ID Act credibility findings no longer need to go 'to the heart of the applicant's claim.'"  *Malkandi v. Holder*, 576 F.3d 906, 918 (9th Cir. 2009), quoting 8 U.S.C. § 1158(b)(1)(B)(iii).   "The explicit statutory language and purpose behind the statutory change totally demolish [the] argument that inconsistencies must go to the heart of his claim."  *Shrestha*, 590 F.3d at 1046.

This statutory change also has significant consequences on our review of Board decisions to uphold IJ adverse credibility determinations.  Before and after the enactment of the REAL ID Act, we reviewed Board decisions for substantial evidence and were required to accept "[f]actual findings [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014), quoting 8 U.S.C. § 1252(b)(4)(B).  As inconsistencies that form the basis of an adverse credibility determination no longer need to go to the heart of a petitioner's claim, we need not consider whether an inconsistency identified by the IJ or Board is central.

We have continued to clarify how, pursuant to the REAL ID Act, other factors, such as omissions, can form the basis of an adverse credibility determination. *See Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014) ("In general, however, omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony."); *see also Iman v. Barr*, 972 F.3d 1058, 1067 (9th Cir. 2020) (holding that while "[o]missions need not go to the heart of a claim," "[a] collateral or ancillary omission that, under the totality of the circumstances, has no tendency to suggest an applicant fabricated her or his claim is likewise insufficient to support an adverse credibility determination"). In *Iman*, we held that a petitioner's omission was not a proper basis for the IJ's adverse credibility determination, in part because the omission did not bolster his claim, *id.* at 1068–69, *citing Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011), and in part because the petitioner's testimony was not volunteered but rather was elicited through the government's cross-examination, *id.* at 1068. Our decision in *Iman* clarifies the extent to which omissions may form the basis of an adverse credibility determination. Nevertheless, the plain text of the REAL ID Act makes clear that *inconsistencies* need not go to the heart of a petitioner's claim, and our court continues to hold that "[u]nder the REAL ID Act, even minor inconsistencies that have a bearing on a petitioner's veracity may constitute the basis for an adverse credibility determination." *Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011), *citing Shrestha*, 590 F.3d at 1044.

In the end, petitioners carry a substantial burden to convince us to overturn a Board decision denying relief on credibility grounds, particularly when the Board has adopted multiple bases for its adverse credibility determination. Although in numerous cases post-REAL ID Act, we had

applied the single factor rule, which required us to uphold an adverse credibility determination so long as even one basis is supported by substantial evidence, *see e.g.*, *Lizhi Qiu v. Barr*, 944 F.3d 837, 842 (9th Cir. 2019), we overruled those cases en banc in *Alam v. Garland*, *see* No. 19-72744, 2021 WL 4075331, at *5 (9th Cir. Sept. 8, 2021) (en banc) ("To the extent that our precedents employed the single factor rule . . . , we overrule those cases."). After *Alam*, "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination." *Id.* Rather, "in assessing an adverse credibility finding under the [REAL ID] Act, we must look to the 'totality of the circumstances[] and all relevant factors." *Id.*, *quoting* 8 U.S.C. § 1158(b)(1)(B)(iii).

## III.

With this clarification, we now review the inconsistencies and omissions that formed the basis of the Board's decision. "When the [Board] conducts its own review of the evidence and law rather than adopting the IJ's decision, our review is limited to the [Board's] decision, except to the extent that the IJ's opinion is expressly adopted." *Shrestha*, 590 F.3d at 1039 (citation and quotation marks omitted). In adopting the IJ's adverse credibility determination, the Board expressly relied on four inconsistencies or omissions relating to Li's treatment in jail, her husband's termination, the false information provided in her asylum application, and the false information provided in her visa application. Even though the discrepancies regarding Li's treatment in jail and her husband's employment are not necessarily probative of Li's lack of veracity, her submission of false information in her asylum and visa applications are inconsistencies sufficient to support the adverse credibility determination.

First, the Board relied on the IJ's finding that Li's testimony regarding her treatment in jail on cross-examination was inconsistent with that on direct examination. Although the IJ and Board identified a discrepancy in Li's responses, the transcript reveals no such inconsistency. On direct examination, Li testified that "they" did not allow her to eat, and on cross-examination, she stated that while the prison guards gave her food to eat, her fellow inmates did not allow her to eat that food. Upon hearing her response, the government asked why Li said she was not given any food. However, the transcript shows that Li never said she was not *given* food. We understand that Li's use of pronouns with ambiguous antecedents might have been misleading, but that itself does not produce an inconsistency.

Second, Li's omission regarding her husband's employment was not a proper basis for the adverse credibility determination. During the government's cross-examination, Li explained that her husband lost his job as a teacher because of her religious activities. She could not explain why her husband did not mention the termination in his letter of support. The transcript suggests that this might be a collateral or ancillary omission that, under the totality of the circumstances, has no tendency to suggest Li fabricated her claim. *See Iman*, 972 F.3d at 1067. The omitted information concerned adverse consequences for a third party, Li's husband. *See id.* at 1068; *see also Lai*, 773 F.3d at 973–74 (holding that "initial omission of incidents affecting only third parties [was] less probative of credibility" because "asylum claims ordinarily are centered around events and circumstances that the applicants have experienced directly"). Moreover, Li did not volunteer the information to bolster her claim, but rather the IJ elicited Li's brief responses during cross-examination. *Compare Lai*,

773 F.3d at 973 (finding it implausible an applicant would seek to bolster a claim only through responses to government questioning) *with Silva-Pereira v. Lynch*, 827 F.3d 1176, 1186 (9th Cir. 2016) (upholding adverse credibility determination based on omitted information where newly introduced information contained allegations crucial to establishing the petitioner's claim).  Li's omitted information regarding her husband's termination is insufficient to support an adverse credibility determination.

We now turn to the first of the two remaining discrepancies relied upon by the Board: Li's submission of false information in her asylum application regarding her arrest record.  "Under the REAL ID Act credibility findings no longer need to go 'to the heart of the applicant's claim.'" *Malkandi*, 576 F.3d at 918, *quoting* 8 U.S.C. § 1158(b)(1)(B)(iii).  In her asylum application, Li submitted false information that she had never been arrested for any crime in the United States.  Li argues that, because the charge was dismissed, she felt that she was "not convicted as a criminal," and her failure to "understand the difference between an arrest and a conviction [was] reasonable."  However, she cites no authority for the proposition that an IJ must accept a petitioner's explanation that the submission of false information was based on a reasonable mistake when evaluating a petitioner's credibility.  Moreover, it is significant that Li had counsel when she signed her asylum application before the IJ, representing that its contents were true, and such an interpretation of the asylum application's question about prior arrests and convictions is implausible.  Indeed, even if Li and her counsel's interpretation were reasonable, the IJ and Board were not compelled to accept her explanation for the discrepancy. *Lianhua Jiang v. Holder*, 754 F.3d 733, 740 (9th Cir. 2014) (holding that requiring the IJ to accept

the petitioner's alternative plausible interpretation would amount to improper de novo review), *overruled on other grounds by Alam,* 2021 WL 4075331. Particularly because Li was assisted by counsel, the Board and IJ were not required to accept Li's explanation for the discrepancy, and the record does not compel a contrary conclusion.

We also highlight that Li cites *Wang v. Ashcroft*, 341 F.3d 1015, 1021–22 (9th Cir. 2003), a pre-REAL ID Act opinion, for the proposition that an inconsistency must be material to affect an asylum or withholding claim. However, this is no longer the case under the REAL ID Act, and even minor inconsistencies may have a legitimate impact on a petitioner's credibility. *Shrestha*, 590 F.3d at 1044. Indeed, in *Shrestha*, we stated that "[w]e do not intend to suggest that under the totality of the circumstances each inconsistency must be material in the sense of important to the petitioner's well-founded fear of persecution; such a requirement would contradict the REAL ID Act's plain text." *Id.* at 1043 n.4. Her brief's reliance on pre-REAL ID Act case law was misleading because it is no longer valid law. More importantly, Li's submission of false information in her asylum application is a major inconsistency.

Under the totality of circumstances, Li's submission of false information regarding her employment as treasurer for a firm that produced wine in her visa application also supports the Board's adverse credibility determination. While this factor alone might not support an adverse credibility finding, *see Singh v. Holder*, 638 F.3d 1264, 1271 (9th Cir. 2011) (explaining that false statements used to flee persecution generally do not undermine credibility), it is an appropriate factor to consider here, where Li made no attempt during her hearing to explain why she needed to provide the false information.

These two inconsistencies are both supported by substantial evidence and are sufficient to support the adverse credibility determination. We do not consider the Board's alternate holding that Li failed to show past persecution. The record does not compel the conclusion that the adverse credibility determination was erroneous. The petition for review is **DENIED.**