NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 2 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| S. K. M.,<br><br>     Petitioner,<br><br> v.<br><br>MERRICK B. GARLAND, Attorney<br>General,<br><br>     Respondent. | Nos. 22-50; 23-2366<br><br>Agency No.<br>A096-704-824<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 3, 2024[**]
Pasadena, California

Before: BEA, OWENS, and KOH, Circuit Judges.

Petitioner S.K.M., a native and citizen of Kenya, petitions for review of two decisions by the Board of Immigration Appeals ("BIA"), which (1) affirmed the immigration judge's ("IJ") denial of S.K.M.'s claims for withholding of removal and protection under the Convention Against Torture ("CAT") based on an adverse

---

 [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
 [**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

credibility finding; and (2) denied S.K.M.'s motion to reopen to seek cancellation of removal. We have jurisdiction under 8 U.S.C. § 1252. The BIA's affirmance of the IJ's adverse credibility finding is reviewed for substantial evidence,[1] *see Li v. Garland*, 13 F.4th 954, 958–59 (9th Cir. 2021), and the BIA's denial of S.K.M.'s motion to reopen is reviewed for abuse of discretion, *see Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). For reasons set forth below, we deny both of S.K.M.'s petitions for review.[2]

1.      The BIA found that the IJ's adverse credibility finding was adequately supported by inconsistencies between S.K.M.'s testimony and other record evidence, inconsistencies within S.K.M.'s own testimony regarding events of substantial gravity underlying his claims, and significant omissions in S.K.M.'s written testimony. We agree.

S.K.M. challenges the BIA's affirmance of the IJ's adverse credibility finding from three angles. *First*, S.K.M. argues that the BIA and the IJ, in compliance with *Ren v. Holder*, 648 F.3d 1079 (9th. 2011), should have evaluated his testimony alone without regard to other record evidence and should have given him an opportunity

---

[1]      Where, as here, the BIA affirmed an IJ's decision and incorporated portions of it as its own, we review the BIA's decision, as well as the IJ's decision to the extent it was incorporated. *See Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014).

[2]      Because the parties are familiar with the facts, we recount them only as relevant to our decision.

to produce additional corroborating evidence. This argument flouts the plain text of the REAL ID Act, which allows IJs to base their adverse credibility findings on inconsistencies between a noncitizen's testimony and other record evidence. 8 U.S.C. § 1158(b)(1)(B)(iii). S.K.M.'s reliance on *Ren* is misplaced because *Ren* does not apply unless an IJ first finds a noncitizen's testimony credible. *Ren*, 648 F.3d at 1091–93 & n.11. Here, the IJ found S.K.M.'s testimony not credible, so *Ren* is not applicable.

*Second*, S.K.M. contends that the BIA erred in resting its affirmance of the IJ's adverse credibility finding on trivial omissions. S.K.M. claims the omissions from his declarations of a Mungiki leader's admission of Mungiki members' murder of S.K.M.'s father and the relevant threatening letters received by S.K.M.'s family were nothing but trivial. We are not convinced. These facts, as the BIA observed, portrayed "a much different—and more compelling—story of persecution" and therefore their absence from S.K.M.'s declarations supported the IJ's adverse credibility finding. *Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011).

*Third*, S.K.M. also trivializes his failure to provide accurate testimony about when his parents were murdered. Minor inconsistencies that go to the heart of a noncitizen's claim may, "particularly when viewed cumulatively, deprive [the noncitizen's] claim of the requisite 'ring of truth,'" thereby sustaining an IJ's adverse credibility finding. *Rivera v. Mukasey*, 508 F.3d 1271, 1275 (9th Cir. 2007) (citation

omitted); *see also Shrestha v. Holder*, 590 F.3d 1034, 1046–47 (9th Cir. 2010) ("Although inconsistencies no longer need to go to the heart of [a] petitioner's claim, when an inconsistency is at the heart of the claim it doubtless is of great weight."). Here, S.K.M.'s testimony was rife with internally inconsistent dates of his parents' deaths and other associated events that went to the heart of his claims (e.g., the death threats received by S.K.M.'s family). We agree with the BIA that these inconsistencies "regarding events of substantial gravity, when considered with other evidence in the record," undermined S.K.M.'s credibility.

Where S.K.M. cannot trivialize, he tries to explain, but only in vain. With respect to the inconsistency between his testimony that he was attacked in the same house in Ndenderu, Kenya where his father was murdered and his U.S. visa application which stated he lived in Gachie, Kenya at the time, S.K.M. claims he misunderstood the question at the hearing. According to S.K.M., he thought the question was whether he was attacked in the same house where he lived "after"— not "when"—his father was killed, when he answered "yes." S.K.M. thus argues his testimony was not at odds with his U.S. visa application because he in fact lived in Gachie, Kenya after Mungiki members' murder of his father. In a similar vein, S.K.M. asserts his testimony that his father was murdered by Mungiki members did not conflict with his father's death certificate which identified malaria as the cause of his death. S.K.M. argues that malaria was the "cause" of his father's death

whereas Mungiki member's attack was the "manner" of his father's death, and that the "cause" and the "manner" of a person's death are distinct concepts. In our view, these explanations of the inconsistencies between S.KM.'s testimony and other record evidence stretch credulity.

Therefore, substantial evidence supports the BIA's affirmance of the IJ's adverse credibility finding and, in turn, the BIA's dismissal of S.K.M.'s appeal.[3]

2.     S.K.M. moved to reopen his removal proceedings before the BIA to seek cancellation of removal, as he had married a noncitizen who had been granted asylum and had been seeking a lawful permanent residence status ("LPR").[4] S.K.M. claimed his removal would cause his wife "exceptional and extremely unusual hardship" under 8 U.S.C. § 1229b(b)(1)(D).

S.K.M.'s wife submitted an affidavit in support of S.K.M.'s motion to reopen. In that affidavit, S.K.M.'s wife stated that (a) she suffered permanent emotional and physical harm as a victim of female genital mutilation in Kenya; (b) she for the first time in her life experienced satisfaction in intimacy as a result of his marriage with

---

[3]     As a plain reading of S.K.M.'s brief before the BIA demonstrates, the BIA did not err in concluding S.K.M. had waived the argument that the record evidence entitled him to the requested relief even absent his testimony.

[4]     S.K.M. claims his wife became an LPR before the BIA denied his motion to reopen. The BIA's denial of S.K.M.'s motion to reopen did not hinge on whether S.K.M.'s wife became an LPR. Accordingly, S.K.M.'s motion for judicial notice of his wife's LPR card is **DENIED** as moot (No. 22-50, Dkt. 35; No. 23-2366, Dkt. 19).

S.K.M.; (c) she was bonded to S.K.M. to such a degree that a removal of S.K.M. from the United States would "certainly" cause her "exceptional and extremely unusual hardship"; and (d) she could not accompany S.K.M. to Kenya because she would suffer "exceptional and extremely unusual hardship" upon return to Kenya, where she had suffered the female genital mutilation. S.K.M.'s wife's affidavit was corroborated by a physical examination report, two psychology reports, as well as S.K.M.'s affidavit.

The BIA denied S.K.M.'s motion to reopen for cancellation of removal on two independent grounds.[5] First, the BIA concluded that S.K.M. had "not met his burden of establishing that he [was] prima facie eligible for cancellation [of removal]." In the BIA's view, S.K.M. was unlikely to establish his wife, "whom he married almost [two] years after [the IJ] ordered him removed, w[ould] experience exceptional and extremely unusual hardship upon his removal." Second, the BIA held that S.K.M. had not established he would likely "obtain cancellation of removal in the exercise of discretion." In particular, the BIA reasoned that S.K.M.'s "new

---

[5]    In deciding a noncitizen's request for cancellation of removal, the IJ proceeds "in two steps." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). First, in the eligibility step, the IJ must decide whether the noncitizen "is eligible for cancellation under the relevant statutory criteria." *Id.*; *see* 8 U.S.C. § 1229b(b)(1)(A)–(D). Second, in the discretion step, the IJ must decide whether the noncitizen merits a favorable exercise of discretion to be granted cancellation of removal. *Wilkinson*, 601 U.S. at 213, 225 n.4. "A noncitizen bears the burden of proving that he both satisfies the applicable eligibility requirements and merits a favorable exercise of discretion." *Id.* at 213 (cleaned up) (citation omitted).

evidence," when weighed against several "serious negative factors" in the record—including the IJ's adverse credibility finding—was unlikely to merit S.K.M. a favorable exercise of discretion.

Although new evidence submitted in support of a motion to reopen must generally be credited unless the facts asserted therein are "inherently unbelievable," *Yang v. Lynch*, 822 F.3d 504, 508 (9th Cir. 2016) (citation omitted), the BIA here was not obligated to find S.K.M.'s new evidence *legally* sufficient for establishing "exceptional and extremely unusual hardship."[6] Even crediting S.K.M.'s evidence, we discern no abuse of discretion in the BIA's denial of S.K.M.'s motion to reopen, especially given S.K.M. only married his wife two years after he was ordered to be removed and approximately one year before he filed his motion to reopen. Granted, a reasonable mind could reach a different conclusion based on the record of this case. But that does not mean the BIA's denial here was "arbitrary, irrational, or contrary to law." *Perez*, 516 F.3d at 773 (citation omitted).

S.K.M. faults the BIA for ignoring facts that might have favored reopening his removal proceedings. While the BIA did not detail every factual assertion favorable to S.K.M., the BIA did appear to have considered evidence regarding

---

[6] The BIA's conclusion that S.K.M. legally fell short of establishing "exceptional and extremely unusual hardship" is judicially reviewable. *Wilkinson*, 601 U.S. at 225. We express no view as to whether we have jurisdiction to review the second ground on which the BIA denied S.K.M.'s motion to reopen (i.e., whether S.K.M. would merit cancellation of removal in the exercise of discretion).

S.K.M.'s wife and evaluated how S.K.M.'s removal would impact her. The BIA is not required to "discuss each piece of evidence submitted." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011).[7] Therefore, the BIA did not abuse its discretion in denying S.K.M.'s motion to reopen.[8]

**PETITIONS FOR REVIEW DENIED.**

---

[7] S.K.M.'s motion to file a replacement brief (No. 22-50, Dkt. 49; No. 23-2366, Dkt. 33) and the government's motion to strike S.K.M.'s replacement brief (No. 22-50, Dkt. 52; No. 23-2366, Dkt. 36) are **DENIED** as moot.

[8] S.K.M. also requested the BIA to reopen his case *sua sponte*, which request the BIA failed to address. In general, the BIA's decision not to reopen a case *sua sponte* is discretionary and reviewable only "for the limited purpose of reviewing the reasoning behind the decision for legal or constitutional error." *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016). S.K.M. contends that such a legal and constitutional error was present because the BIA ignored his *sua sponte* request altogether. In this case, it is inconceivable that the BIA will exercise its discretion to reopen S.K.M.'s removal proceedings *sua sponte* after denying S.K.M.'s motion to reopen. Accordingly, it would be futile to remand for the BIA to address S.K.M.'s request for *sua sponte* relief. *See, e.g.*, *Najmabadi v. Holder*, 597 F.3d 983, 991 (9th Cir. 2010).

22-50; 23-2366