**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIZHI QIU; XIAOJIE WU,<br>*Petitioners*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br>*Respondent*. | No. 17-71338<br><br>Agency Nos.<br>A087-876-023<br>A087-876-024<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 14, 2019
Pasadena, California

Filed December 11, 2019

Before: Susan P. Graber and Marsha S. Berzon, Circuit
Judges, and James Donato,[*] District Judge.

Opinion by Judge Graber

---

[*] The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' decision affirming an immigration judge's denial of asylum and related relief, and remanded, holding that substantial evidence did not support the IJ's adverse credibility determination.

The panel held that in making the adverse credibility determination, the IJ erred by relying, in part, on an asylum officer's assessment of petitioner's credibility. Noting that an asylum officer's Assessment to Refer merely sets in motion a merits hearing at which an IJ takes evidence and makes independent findings concerning that evidence, the panel held that an IJ may not rely on an asylum officer's subjective conclusions about a petitioner's demeanor or veracity at an earlier interview. The panel also noted that the asylum officer's suspicion that petitioner was feigning illness at her asylum interview was pure speculation, which cannot support an adverse credibility finding in any event.

The panel held that the IJ erred by relying on omissions in detail from petitioner's asylum statement to conclude that she was not credible. The panel explained that where, as here, a petitioner's testimony was consistent with, but more detailed than, her asylum application, the petitioner's testimony is not "per se" lacking in credibility. The panel concluded that it was not reasonable for the IJ to find

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

petitioner less credible merely because her statement did not identify the specific date of her forced abortion or the names of the family planning director and hospital staff who were involved.

The panel held that the record did not support the IJ's finding that petitioner testified inconsistently about why she did not participate more fully in her asylum interview, and whether she requested that her case be forwarded to immigration court, and that even if there were any discrepancies, petitioner provided a reasonable and plausible explanation for such discrepancies, which in any event were too trivial to support an adverse credibility determination.

The panel held that the IJ erred by relying on impermissible speculation in concluding that petitioner lied about her residence being in California so that she could apply through the "backlogged" immigration court in Los Angeles and delay her application. The panel also held that the IJ should have given petitioner notice and an opportunity to explain any discrepancies concerning her state of residence.

The panel held that the Board impermissibly engaged in factfinding when it found that the Proof of Diagnosis petitioner submitted to establish her forced abortion was similar to abortion certificates other courts of appeals have found actually undermined a claim of *forced* abortion. The panel pointed out that the IJ did not comment on that aspect of petitioner's evidence, but instead concluded that petitioner's corroborating evidence was insufficient because it was not authenticated or notarized.

Because the IJ's grounds for finding petitioner not credible were not supported by substantial evidence, the panel held that the IJ should have given petitioner notice and an opportunity to present additional corroborating evidence, including her husband's testimony, and authentication for the Proof of Diagnosis certificate. The panel concluded that the IJ therefore erred in relying on the lack of corroboration to support the adverse credibility determination.

## COUNSEL

William Kiang (argued), Alhambra, California, for Petitioners.

Andrea Gevas (argued) and Scott M. Marconda, Trial Attorneys; Keith I. McManus, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

GRABER, Circuit Judge:

Petitioner Lizhi Qiu, a native and citizen of China, applied for asylum. She alleged that Chinese government officials subjected her to a forced abortion. An immigration judge ("IJ") denied relief on the ground that Petitioner's testimony was not credible, and the Board of Immigration Appeals ("BIA") dismissed her appeal. Petitioner timely sought our review. We grant the petition and remand.

BACKGROUND

Petitioner was admitted to the United States in August 2009 as a non-immigrant student to study at Valparaiso University in Indiana. In December 2009, her husband, Xiaojie Wu, was admitted to the United States as a non-immigrant spouse of a non-immigrant student. Both Petitioner and her husband are natives and citizens of China and are Han Chinese by ethnicity. They have two children, a son who was born in China in March 2008 and a daughter who was born in the United States in February 2013.

In April 2010, Petitioner concluded her studies at Valparaiso, thus terminating her non-immigrant status. In May 2010, Petitioner filed an application for asylum in California, where she stated she was currently residing. She asserted that the Chinese government had forced her to abort a pregnancy in September 2008 and that she feared that, if returned to China, she would be forced to abort any future pregnancies. *See* 8 U.S.C. § 1101(a)(42) (2000) (providing that a person who has been physically subjected to a forced abortion is entitled to refugee status). Her husband is a derivative applicant.

Petitioner appeared at an asylum interview in July 2010, along with her lawyer. At the interview, Petitioner asked to correct the dates of her attendance at Valparaiso because she was no longer attending classes there, although she had not notified the school. In his Assessment to Refer, the asylum officer stated that Petitioner became "evasive" when he asked why she had not informed the school. The officer left the room to talk with a supervisor; when he returned, Petitioner said that she did not feel well and wanted to leave.

In the Assessment to Refer, the asylum officer wrote that Petitioner declined to reschedule the interview, asserting that it was "not necessary" because she wanted to be referred to immigration court. But Petitioner did agree to answer some of the asylum officer's further questions. She described the forced abortion that had occurred in September 2008 and said that she feared that, if she returned to China, the government would force her to abort any future pregnancies as well. Petitioner then repeated that she felt unwell and declined to continue the interview. The asylum officer referred Petitioner to immigration court because he concluded that she had failed to meet her burden of proof.

The merits hearing before an IJ took place more than five years later, in September 2015. Petitioner testified that she and her husband lived in Inner Mongolia when they had their son in March 2008. Six months later, in September 2008, the local family planning director came to Petitioner's home and took her to the hospital for the insertion of an intrauterine device ("IUD"). But a pre-operative urinalysis showed that Petitioner was pregnant. Petitioner testified that she wanted to keep the baby, but the family planning director told her that she must have an abortion immediately. Petitioner said that she begged to be allowed to keep the baby, offered to pay a fine, and tried to run away, but she was physically restrained by the family planning office staff and forced to have an abortion 30 minutes later. The procedure took about 20 minutes. Afterward, Petitioner returned home. Her husband learned about the abortion when he got home later the same day. Petitioner also testified that she had an IUD inserted sometime after the abortion, but had it removed in July 2009 before she left China.

On cross-examination, the government questioned Petitioner about her asylum interview. Petitioner testified that she did not remember whether she told the officer that she felt ill, whether she refused to reschedule, or whether she had requested that her case be referred to immigration court. Petitioner testified that she was "very nervous" during the asylum interview and "only listen[ed] to whatever the interpreter at that time told me." Petitioner admitted that she knows English well but, because the situation was new to her and she was nervous, she listened only to the interpreter.

On redirect, Petitioner explained that she had been confused at the interview with the asylum officer and could not remember clearly what had happened. When her lawyer asked whether she had made "a request to the asylum officer that [she] wanted [her] case forwarded for testimony to immigration court," she responded, "I did not." Petitioner's husband was present at the hearing but did not testify.

At the hearing, Petitioner submitted a "Proof of Diagnosis" document to support her claim. She testified that she received the document, after the abortion, from the doctor who performed the procedure. The document, dated September 13, 2008, states that Petitioner was pregnant; it proposes an abortion and rest for two weeks as the treatment. Petitioner testified that she gave the document to her mother- and father-in-law because they were in the habit of keeping medical receipts. Petitioner called them when she was preparing her asylum application and asked that they send her the document, which they did. The document was neither notarized nor authenticated.

Petitioner also submitted notes from her doctor in California relating to her 2012 pregnancy in the United

States.  The notes state that Petitioner had a prior pregnancy carried to term in 2008 and another pregnancy in 2008 that resulted in a "VTP" delivery after eight weeks.[1]

The government submitted the State Department's China Country Conditions Report from May 2007.  The report notes that China's family planning regulations are "most strictly enforced on Han Chinese in urban areas."  The report also explains that the only "abortion certificate" known by the United States Embassy is one that hospitals provide to women who have voluntary abortions; the certificate allows them to request sick leave from their employers.

In a written decision, the IJ found that Petitioner was not credible and denied her application for asylum.  The IJ identified several inconsistencies and omissions in Petitioner's asylum application and testimony.  The IJ stated that Petitioner had failed to be forthcoming both at her asylum interview and at her merits hearing.  The IJ concluded that the corroborating evidence Petitioner submitted had some probative value but was not sufficient to meet her burden of proof to establish past persecution.  The IJ then determined that Petitioner had not met her burden of establishing a well-founded fear of future persecution.

Petitioner timely appealed the IJ's decision to the BIA. She filed supplemental documentation with the BIA:  a notarized and authenticated version of the Proof of Diagnosis. The BIA dismissed Petitioner's appeal in January 2017.  The BIA agreed with the IJ's adverse credibility finding and the IJ's finding that Petitioner's corroborating evidence did not

---

[1] The IJ did not know what "VTP" referred to, but concluded that the record provided corroboration that Petitioner had undergone an abortion.

suffice to meet her burden of proof. The BIA agreed that Petitioner did not provide "credible specific, detailed or persuasive testimony" and did not provide reasonably available corroborating evidence.

In April 2017, the BIA vacated its January 2017 decision because, due to an administrative error, it had failed to address Petitioner's additional documentation. After reviewing the document, the BIA held that Petitioner had not met her burden to reopen proceedings because she did not show that the new evidence would likely change the outcome of her case and she did not explain why the document could not have been submitted to the IJ. The BIA issued an amended decision, again dismissing Petitioner's appeal, and incorporated by reference its earlier decision. Petitioner timely petitions for review.

## STANDARDS OF REVIEW

We review de novo the BIA's rulings on questions of law and mixed questions of law and fact. *Bringas-Rodriguez v. Sessions*, 850 F.3d at 1059 (9th Cir. 2017) (en banc); *Cardoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013).

We review for substantial evidence the BIA's factual findings. Those factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We must uphold an adverse credibility determination "so long as even one basis is supported by substantial evidence." *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011). The BIA may rest an adverse credibility determination on an inconsistency or inaccuracy "without regard to whether" it "goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

Although that standard is deferential, there must be a "specific cogent reason" for an adverse credibility finding. *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010).

When the BIA conducts its own review of the facts and law, we review only the BIA's decision except to the extent that the BIA expressly adopts the IJ's opinion. *Id.* at 1039. We review those parts of the IJ's adverse credibility findings on which the BIA relied. *Lai v. Holder*, 773 F.3d 966, 974 n.2 (9th Cir. 2014).

## DISCUSSION

The IJ and the BIA premised the adverse credibility finding on the following factors:

A. Petitioner was evasive during her interview with the asylum officer.

B. In her asylum application, Petitioner omitted certain details about the forced abortion.

C. At the merits hearing before the IJ, Petitioner provided conflicting testimony about the interview with the asylum officer.

D. Petitioner did not list an Indiana residence on her asylum application.

E. The BIA added that Petitioner's Proof of Diagnosis was "similar" to an abortion certificate that other "courts of appeals have found undermines rather than supports a conclusion that the abortion was coerced."

F. Petitioner failed to provide corroborating evidence; specifically, her husband did not testify, and she did not present a notarized or authenticated version of the Proof of Diagnosis.

We consider each of those reasons in turn.

A. *Interview with Asylum Officer*

Ordinarily, an asylum interview is an unreliable point of comparison to a petitioner's testimony for purposes of a credibility determination. *Singh v. Gonzales*, 403 F.3d 1081–87 (9th Cir. 2005). When an Assessment to Refer has sufficient indicia of reliability, though, an IJ may consider inconsistencies between what a petitioner said to an asylum officer and the petitioner's testimony before the IJ. *See id.* at 1087–90 (rejecting reliance on an Assessment to Refer because it lacked sufficient indicia of reliability); *accord Kartasheva v. Holder*, 582 F.3d 96, 105 (1st Cir. 2009); *Koulibaly v. Mukasey*, 541 F.3d 613, 620 (6th Cir. 2008); *Diallo v. Gonzales*, 445 F.3d 624, 632–33 (2d Cir. 2006).

Here, however, the IJ and the BIA went beyond relying on factual statements made in the Assessment to Refer. The agency found, and the government argues here, that Petitioner's "overall behavior during . . . her asylum interview also undermined her credibility." In other words, the *IJ* relied on the *asylum officer's* assessment of Petitioner's credibility. That reliance was legally erroneous.

The Assessment to Refer is just that; it sets in motion a merits hearing at which an IJ takes evidence and makes independent findings concerning *that* evidence. *See Singh*, 403 F.3d at 1087 (noting that an asylum officer's role is

limited "merely to screening and granting all applications in which the applicant is subject to removal, or referring the applicant's case to an [IJ]"); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001) ("The [asylum] officer meets informally with the applicant, considers the documents presented with the asylum application, then decides whether asylum should be granted or whether the matter should be referred to an IJ for formal adjudication."). The IJ may not rely on an asylum officer's subjective conclusions about a petitioner's demeanor or veracity at an earlier interview. *See Ishak v. Gonzales*, 422 F.3d 22, 32–33 (1st Cir. 2005) (suggesting that it would have been improper for the IJ to rely on an asylum officer's credibility assessment instead of making his or her own); *Prawira v. Gonzales*, 405 F.3d 661, 663 (8th Cir. 2005) (noting that "the IJ properly considered the factual information given [by] the asylum officer and ignored the officer's credibility findings").

The reason why we give special deference to an *IJ's* credibility determination is that the IJ himself or herself had the opportunity to evaluate the petitioner's behavior in person. *Sing-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999). Even then, we require a cogent explanation of the specific aspects of the petitioner's demeanor that detracted from his or her credibility. *Arulampalam v. Ashcroft*, 353 F.3d 679, 685–86 (9th Cir. 2003). Here, the asylum officer's suspicion that Petitioner was feigning illness is pure speculation, which cannot support an adverse credibility finding in any event. *Ge v. Ashcroft*, 367 F.3d 1121, 1124 (9th Cir. 2004).

In short, the asylum officer's credibility conclusion cannot support the adverse credibility finding.

B. *Omission of Details*

The IJ noted that Petitioner did not provide "dates, names or other details" about the forced abortion in her asylum statement. The IJ also observed that Petitioner testified that she had her IUD removed before coming to the United States but omitted that point from her asylum statement. The lack of detail in a petitioner's asylum application may be a relevant factor for assessing credibility. *Shrestha*, 590 F.3d at 1040. For example, when a petitioner makes only "vague assertions" in both the asylum application and at the merits hearing, the lack of detail can support an adverse credibility finding. *Id.* at 1046. But here, Petitioner provided "particular details" in both her statement and her testimony. *Id.*

Petitioner's 2010 asylum statement included the month, year, and location of the forced abortion. The statement also described what happened when she went to the hospital and specific things that Petitioner and the others involved said and did. Where, as here, Petitioner's testimony was consistent with, but more detailed than, her asylum application, Petitioner's testimony is not "per se lacking in credibility." *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996). The "mere omission" of additional, consistent details is "insufficient to uphold an adverse credibility finding." *Lai*, 773 F.3d at 971 (quoting *Singh*, 403 F.3d at 1085). Finding Petitioner less credible merely because her statement did not note the specific date the abortion occurred or the names of the family planning director and hospital staff is not reasonable. *See Shrestha*, 590 F.3d at 1041 ("[T]he Real ID Act imports a 'rule of reason' into the assessment of the standard governing an IJ's credibility determination."); *see also Ren v. Holder*, 648 F.3d 1079, 1086 (9th Cir. 2011) ("[M]inor discrepancies in dates that . . . cannot be viewed as

attempts by the applicant to enhance his claims of persecution have no bearing on credibility." (ellipsis in original) (quoting *Singh*, 403 F.3d at 1092)). Accordingly, this justification does not support the adverse credibility finding.

### C. *Testimony about Asylum Interview*

The IJ found, and the BIA agreed, that Petitioner gave conflicting testimony at the merits hearing on the topic of the asylum interview. Petitioner testified that she did not remember why she did not participate fully in the asylum interview. She explained that, because she had been nervous and the situation was a new one for her, she "only listen[ed] to whatever the interpreter . . . told me." She said that she had been confused and did not know why her case ended up going to immigration court. When asked if she "specifically [made] a request to the asylum officer" that she wanted her case forwarded to immigration court, Petitioner responded, "I did not."

The IJ interpreted that statement as directly contradicting Petitioner's earlier testimony. The IJ erroneously stated that she testified that "she did what the interpreter told her." That conclusion is not supported by the record. Petitioner testified that she "*listened*" only to the interpreter, not that she "*did*" what the interpreter told her to do.

Arguably, Petitioner's answer conflicts with the asylum officer's statement that Petitioner "requested to be sent directly to court." But Petitioner testified that she was confused during the asylum interview and did not remember the details of her exchange with the asylum officer that had taken place five years earlier. It is not inherently implausible that, five years later, Petitioner would not recall the exact

details of this exchange. *See Shrestha*, 590 F.3d at 1044–45 ("[T]he normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness's case.").

There is also a "reasonable and plausible explanation for the apparent discrepancy." *Rizk*, 629 F.3d at 1088 (internal quotation marks omitted). Petitioner, her counsel, and an interpreter all were present at the asylum interview. Any one of them could have made the request to have the case forwarded to immigration court, which would be consistent both with the Assessment to Refer and with Petitioner's testimony that *she* did not "*specifically*" make the request. For the IJ to assume that Petitioner lied was unreasonable. *Shrestha*, 590 F.3d at 1041.

Even assuming that this was a true inconsistency, it was too trivial to support an adverse credibility finding. Although "even minor inconsistencies, in proper circumstances, will support an adverse credibility determination," an "utterly trivial inconsistency" will not. *Shrestha*, 590 F.3d at 1043 & n.4. Whether Petitioner herself directly asked the asylum officer to have her case forwarded to immigration court, or someone else did on her behalf, is a trivial matter. *See Ren*, 648 F.3d at 1086 ("[T]o support an adverse credibility determination, an inconsistency must not be trivial and must have some bearing on the petitioner's veracity.").

Finally, nothing in the record makes it "inherently improbable" that, at a legal proceeding, Petitioner relied on the interpreter despite her fluency in English, which is not her native language. *Yan Xia Shu v. Mukasey*, 537 F.3d 1034, 1039 (9th Cir. 2008).

Petitioner's testimony about the asylum interview does not support the adverse credibility finding.

### D. *Indiana Address*

Petitioner stated that she completed her studies at Valparaiso in April 2010. But she did not receive her diploma until December 2010. The IJ reasoned that Petitioner must have continued to live in Indiana until she received her diploma. Thus, the IJ concluded that Petitioner was being untruthful when, in May 2010, she listed on her asylum application a California address as her current residence. The IJ surmised that Petitioner lied about her residence so that she could apply through the "backlogged" immigration court in Los Angeles and delay her application process. This supposition, which reflects an unwarranted assumption that a graduate student must continue to live near the university until the diploma is conferred, is pure speculation. Neither the IJ nor the government asked Petitioner about the inconsistency at the merits hearing, so it cannot justify the denial of asylum. *See Singh*, 403 F.3d at 1085 ("Where an asylum applicant is denied a reasonable opportunity to explain what the IJ perceived as an inconsistency in her testimony, the IJ's doubt about the veracity of her story cannot serve as a basis for the denial of asylum." (alterations and internal quotation marks omitted)).

Even if we could consider this reason, in the education section of her application, Petitioner did list Valparaiso University and the dates she attended. Petitioner's application, then, provided enough information for the asylum officer to conclude that Petitioner had recently lived in Indiana, despite the omission from the "residences" section. The IJ's speculation that Petitioner was in fact *still*

living in Indiana is not a sufficient basis for an adverse credibility finding. *See Ge*, 367 F.3d at 1124 ("[S]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." (internal quotation marks omitted)).

### E.  *Proof of Diagnosis*

The BIA impermissibly engaged in factfinding when it observed that Petitioner's Proof of Diagnosis was "similar" to an abortion certificate that other "courts of appeals have found undermines rather than supports a conclusion that the abortion was coerced." 8 C.F.R. § 1003.1(d)(3)(iv); *Ridore v. Holder*, 696 F.3d 907, 911 (9th Cir. 2012). The IJ did not comment on that aspect of Petitioner's document. The IJ found that the Proof of Diagnosis did not corroborate Petitioner's claims because she had not had it notarized or authenticated, but made no finding that the document undermined her claim that her abortion was *forced*. The BIA erred, then, when it made its own factual finding that the document was of the type that would refute Petitioner's claim of a *forced* abortion. *See Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012) ("Where the BIA fails to follow its own regulations and makes factual findings, it commits an error of law, which we have jurisdiction to correct." (internal quotation marks omitted)).

In sum, none of the agency's reasons for the adverse credibility finding is supported by substantial evidence in the record.

F.  *Corroboration*

The agency faulted Petitioner for failing to call her husband as a witness and for failing to authenticate the Proof of Diagnosis.  Because the reasons for finding Petitioner not credible are not supported by substantial evidence, she was entitled to notice and an opportunity to produce corroborating evidence or explain why it was unavailable.  *Lai*, 773 F.3d at 975–96; *Ren*, 648 F.3d at 1090.

The IJ did not ask why Petitioner's husband did not testify and did not alert Petitioner that his corroboration was needed.  Thus, Petitioner did not have notice that the lack of her husband's testimony could lead to an adverse credibility finding.  *See Sidhu v. INS*, 220 F.3d 1085, 1092 (9th Cir. 2000) (holding that, where an applicant had no notice that an adverse credibility determination could be based on his failure to call a witness to corroborate his testimony, due process required a remand for a new hearing).

Additionally, neither the IJ nor the government raised any questions about the Proof of Diagnosis, or any other part of Petitioner's testimony regarding the forced abortion, at the merits hearing.  Petitioner thus had no notice of the problem with the Proof of Diagnosis document until the IJ issued her order.

We hold that the IJ was required to provide Petitioner with notice and an opportunity to respond, but the IJ failed to do so.  Only after providing notice and an opportunity to respond could the IJ (1) rule that Petitioner had not met her burden of proof due to the failure to produce corroborating evidence or (2) rely on that failure to make an adverse credibility finding.  *Ren*, 648 F.3d at 1090.  Accordingly, the

agency could not properly rely on lack of corroboration to support an adverse credibility finding.

**PETITION GRANTED; REMANDED.**