**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IBRAHIM ABDULKARIM IMAN,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 17-72318

Agency No.
A209-389-045

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 10, 2020[*]
Pasadena, California

Filed August 25, 2020

Before: Bobby R. Baldock,[**] Marsha S. Berzon, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Baldock

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Bobby R. Baldock, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[***]

**Immigration**

The panel granted Ibrahim Iman's petition for review of the Board of Immigration Appeals' denial of asylum and related relief on adverse credibility grounds, and remanded, holding that in light of the totality of the circumstances, and in the context of the administrative record presented, the evidence in this case compelled the conclusion that Iman's testimony was credible.

The panel concluded that to the extent the Board relied on the immigration judge's findings that Iman's testimony was nonresponsive or undetailed, substantial evidence did not support that determination. The panel explained that in order to base an adverse credibility determination on a petitioner's nonresponsiveness, the IJ and the Board must identify specific instances, supported by the record, where the petitioner did not respond. The panel observed that both the IJ and Board failed to identify any instance during the merits hearing where Iman either refused to answer a direct question or declined to provide requested details regarding his persecution. The panel further explained that its own review of the record revealed no such instance, rather the record showed that Iman gave responsive and detailed answers about his claim.

The panel also concluded that the omission from Iman's asylum application of information about his sisters' rapes,

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which he had previously disclosed to immigration officials during his credible fear interview, did not support the adverse credibility determination. The panel explained that although under the REAL ID Act omissions need not go to the heart of a claim to be considered when evaluating an applicant's credibility, they must still be weighed in light of the totality of the circumstances and all relevant factors. The panel further explained that a collateral or ancillary omission that, under the totality of the circumstances, has no tendency to suggest an applicant fabricated her or his claim is insufficient to support an adverse credibility determination. The panel observed that Iman's omission concerned adverse consequences for third parties, rather than Iman himself. The panel explained that because asylum claims ordinarily are centered around events and circumstances that the applicants have experienced directly, Iman's failure (or decision not) to mention the sexual violence against his sisters in his application for relief is less probative of his credibility.

The panel also observed that the omitted information was not inconsistent with the statements in Iman's asylum application, his direct testimony, or any other evidence in the record, but instead supplemented rather than contradicted Iman's account of events. In addition, the panel noted that Iman's testimony about his sisters' rapes was extremely brief—accounting for less than a single page of the hearing transcript—and was elicited through cross-examination from the government. The panel observed that this therefore was not a case where an applicant volunteered new information at the merits hearing in an effort to buttress his claims through eleventh-hour testimony. The panel concluded that given Iman's prior disclosure, the nature of the omitted information, and how the additional information was elicited at the merits hearing, the sole omission the

agency identified in this case did not support its adverse credibility determination.

The panel remanded for consideration of whether, accepting Iman's testimony as credible, he is entitled to relief.

## COUNSEL

Douglas Jalaie, Los Angeles, California, for Petitioner.

Jeffery R. Leist, Senior Litigation Counsel; Lance L. Jolley, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

BALDOCK, Circuit Judge:

Petitioner Ibrahim Iman, a native and citizen of Somalia, petitions for review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Iman claims he is a member of a minority Somali clan who fled Somalia after members of a majority clan forced him to work as slave for over two years, beat him, and killed his brother. An immigration judge (IJ) denied Iman relief, in relevant part, on the ground that his testimony at the merits hearing was not credible. The Board of Immigration Appeals (BIA) upheld the denial of relief based on the IJ's adverse credibility finding and dismissed Iman's appeal.

Iman now challenges the BIA's decision, arguing the adverse credibility determination is not supported by substantial evidence. We agree. In light of the totality of the circumstances and in the context of the administrative record presented to us, the evidence in this case compels the conclusion that Iman's testimony was credible. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we therefore grant the petition and remand to the BIA for further proceedings consistent with this opinion.

I.

On November 9, 2016, a few months after Iman entered the United States, he appeared before the immigration court, conceded removability, and applied for asylum, withholding of removal, and protection under the CAT. In a written declaration included with his application, Iman explained he is a citizen of Somalia and a member of the Madhiban clan, a minority clan discriminated against and persecuted by members of larger clans, such as Habr Gedir, who control the region. For over two years, members of the Habr Gedir clan treated Iman and his family as slaves and forced them to work on farms. On at least one occasion when Iman was tired of working, members of the Habr Gedir clan "tied [him] up and laid [him] out onto the ground in the hot sun and beat [him] with a big stick."

According to his written statement, Iman fled Somalia in May 2004 after members of the Habr Gedir clan killed his brother and took control of his family's land. Iman made his way to Kenya, where he lived both as a refugee and illegally for twelve years before traveling to the United States. In his declaration, Iman claimed he cannot return home because, to his knowledge, members of the Habr Gedir clan still control his family's farm. Iman further explained he cannot return to another town in Somalia because, as a member of a

minority clan, he "will not have any protections from being harmed by [larger clan groups] since there is no recognized government in Somalia that will be responsible for [his] safety."

At the merits hearing before the IJ on February 27, 2017, Iman testified in support of his application for relief. He discussed his mistreatment in Somalia, how Habr Gedir clan members killed his brother after his brother resisted their demands to turn over the family farm, his time living in Kenya, and his travels to the United States. Iman's direct testimony, for the most part, reiterated the written declaration he submitted with his application.

On cross-examination, the government questioned Iman about statements he gave during his credible fear interview at the U.S. border. As relevant here, Iman admitted he had previously told immigration officials his sisters were raped, but he did not include this information in his asylum application or his direct testimony. When the IJ asked Iman why this information was not in his application, he responded, "I—the people who were collecting my interview, I told them about that matter and I do not know the English. I did state to my lawyer all my problems and so I wasn't aware that—and so I was not aware whether it was written or not."

At the conclusion of the merits hearing, the IJ denied Iman's application for asylum, withholding of removal, and CAT protection. The IJ denied relief principally on adverse credibility grounds.[1] In an oral decision, the IJ noted that

---

[1] The IJ also concluded that, even if Iman's testimony was credible, he still failed to meet his burden of proof for asylum, withholding of removal, and CAT protection. Because the BIA did not consider whether

Iman's testimony was, "for the most part, consistent." She also specifically declined to find that Iman "made affirmative misrepresentations to the Court." And she also found it "entirely plausible that a member of [Iman's] tribe would have been treated the way he alleged." But the IJ nonetheless determined that Iman's testimony was not credible for three reasons.

First, the IJ found Iman's testimony lacked "detail in a great number of locations." Iman "would be asked questions multiple times in order to elicit additional detail[,]" the IJ further noted, "and he would simply repeat his underlying claim without the details." Second, the IJ questioned the plausibility of Iman's testimony because he claimed to have overheard a conversation between his brother and members of the Habr Gedir clan from thirty steps away. The IJ also speculated that perhaps "it was another sibling[,]" rather than Iman, who "was out working on a farm by himself with his brother" because Iman would have been twelve or thirteen years old when he witnessed members of the Habr Gedir clan kill his brother. Third, the IJ found that Iman admitted to some inconsistencies between his written declaration and a statement taken at the border, but the only inconsistency the IJ identified was Iman's omission of his sisters' rapes from his asylum application, which he blamed "entirely on his attorney."

Iman appealed the denial of his claims to the BIA. The BIA found no clear error in the IJ's adverse credibility determination and dismissed Iman's appeal. In so doing, the

---

Iman would have established eligibility for asylum, withholding of removal, or CAT protection had he testified credibly, we do not address the merits of the IJ's alternative holdings. *See Tekle v. Mukasey*, 533 F.3d 1044, 1056 (9th Cir. 2008).

BIA cited as "significant[]" Iman's failure to mention his sisters' rapes in his asylum application, and it noted that Iman failed to provide a reasonable explanation for this omission. The BIA also pointed to the IJ's findings that Iman's "testimony was non-responsive or lacking detail when questioned during the hearing," which "indicated a lack of candor." Such findings, the BIA held, constituted a proper basis for an adverse credibility determination.

Without credibility, the BIA determined, Iman was not eligible for asylum or withholding of removal. The BIA further concluded that, in light of the adverse credibility finding, Iman failed to meet his burden of proof for protection under the CAT. Iman timely petitioned for review.

## II.

The central question in this case is whether substantial evidence supports the agency's adverse credibility determination. Iman urges us to answer this question in the negative because, in his view, he offered neither unresponsive nor undetailed testimony at the merits hearing and the BIA erred in relying on a minor omission that doesn't undermine his credibility. After setting forth our standard of review and the relevant legal standards, we address the merits of Iman's arguments.

## A.

When, like here, the BIA issues its own decision but adopts particular parts of the IJ's reasoning, we review both decisions. *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014). In conducting our review, we examine "the reasons explicitly identified by the BIA" and "the reasoning articulated in the IJ's oral decision in support of those

reasons." *Id.* (quoting *Tekle*, 533 F.3d at 1051). But we "do not review those parts of the IJ's adverse credibility finding that the BIA did not identify as 'most significant' and did not otherwise mention." *Id.*

We review factual findings, including adverse credibility determinations, for substantial evidence. *Qiu v. Barr*, 944 F.3d 837, 842 (9th Cir. 2019). "The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1184 (9th Cir. 2016) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this standard, "only the most extraordinary circumstances will justify overturning an adverse credibility determination." *Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010)). Though we afford "a healthy measure of deference" to adverse credibility determinations, *Shrestha*, 590 F.3d at 1041, the agency's reliance on credibility grounds in denying relief cannot insulate its decision from review, *see id.* at 1042. Accordingly, we preserve meaningful appellate review of BIA decisions by requiring the agency to provide "specific and cogent reasons" for an adverse credibility determination. *Id.*

## B.

For applications filed after May 11, 2005, such as Iman's, the credibility standards set forth in the REAL ID Act apply. Pub. L. No. 109-13, 119 Stat. 231 (2005). Under the REAL ID Act, an applicant for relief is not presumed credible, and "the IJ is authorized to base an adverse credibility determination on 'the totality of the circumstances' and 'all relevant factors.'" *Huang v. Holder*, 744 F.3d 1149, 1152–53 (9th Cir. 2014) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Such factors include, but are not

limited to, an applicant's "demeanor, candor, or responsiveness" as well as the consistency between an applicant's statements and other evidence in the record. 8 U.S.C. § 1158(b)(1)(B)(iii).

While an IJ may base an adverse credibility finding on "any . . . relevant factor," she must do so in light of "the totality of the circumstances." *Id.*; *see also Shrestha*, 590 F.3d at 1040. An IJ "cannot selectively examine evidence in determining credibility, but rather must present a reasoned analysis of the evidence as a whole." *Tamang v. Holder*, 598 F.3d 1083, 1093 (9th Cir. 2010). In other words, an IJ may not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha*, 590 F.3d at 1040.

## C.

In affirming the IJ's adverse credibility finding, the BIA relied on the following grounds: (1) Iman's testimony was nonresponsive or lacking detail, which indicated a lack of candor; and (2) Iman omitted from his asylum application information regarding his sisters' rapes. For the reasons given below, we conclude that neither basis supports the agency's adverse credibility decision.

## 1.

We first address the BIA's determination, based on the IJ's credibility findings, that Iman gave nonresponsive or undetailed testimony at the merits hearing. Although the IJ did not label Iman's testimony as nonresponsive, she found that he "would be asked questions multiple times in order to elicit additional detail and he would simply repeat his underlying claim without details."

The lack of detail in an applicant's testimony can be a relevant factor for assessing credibility. *Id.* When an applicant "supplie[s] only vague assertions" and gives "few details" at the merits hearing, the lack of detailed testimony can support an adverse credibility finding. *Id.* at 1046. For this factor to form the basis of an adverse credibility determination, however, the agency must "refer to specific instances in the record that support a conclusion that the factor undermines credibility." *Id.* at 1044; *see also, e.g.*, *id.* at 1046 (concluding substantial evidence supported adverse credibility finding where "IJ noted that [petitioner] had provided 'no particular details' concerning the Maoists' continued interest in him").

In a similar vein, the agency may base an adverse credibility determination on an applicant's unresponsiveness. *Id.* at 1045. But to do so, it "must identify specific instances, supported by the record, where the petitioner did not respond." *Id.* Although a "pinpoint citation" to the record is not necessary, the IJ must identify the particular instances where the petitioner was unresponsive. *Jin*, 748 F.3d at 965 (quoting *Shrestha*, 590 F.3d at 1045); *see also, e.g.*, *id.* ("[T]he IJ explained that Jin was not responsive when he was asked by the government about his residence.").

Here, neither the IJ nor the BIA identified any instance in the record where Iman's testimony at the merits hearing was nonresponsive or lacking detail. As an initial matter, the IJ did not identify any such instance in her oral decision. The IJ noted generally that Iman's testimony was "lacking detail in a great number of locations," which "tends to indicate some memorization," but she did not identify which "locations" or parts of Iman's testimony were lacking in detail. The BIA, on the other hand, points to the following

portion of Iman's testimony in support of the IJ's credibility finding:

> [Government]: Was there anybody else shot besides your brother?
>
> [Iman]: Members of my tribe were always being shot, were always being killed.
>
> [Government]: Was there anybody else shot besides your brother?
>
> [Iman]: Yes, there are other, other people who were shot.
>
> [Government]: In your family?
>
> [Iman]: No.
>
> [Government]: Why did you tell the Immigration officer they started shooting us?
>
> [Iman]: My brother was shot. The shooting that I was talking about was my brother getting shot. And if I had just stood, stood there, I would have been the second person to, to be shot at.
>
> [Government]: You stated to the Immigration officer they started shooting us. Why did you say that?
>
> [Iman]: When they came to the farm they began to shoot. They shot my brother, so I fled.

[Government]: But they didn't shoot you.

[Iman]: There was—I was not struck with a, with a shot.

[Government]: They didn't shoot anybody else in your family, correct?

[Iman]: No.

As the hearing transcript shows, Iman gave responsive and straightforward answers to the government's questions. In response to the government's initial question, Iman testified that members of his clan "were always being shot" by members of the Habr Gedir clan. This testimony was clearly a reference to shootings *in addition* to the one involving Iman and his brother. When the government asked the same question again, Iman gave the same answer. On further questioning that focused specifically on the incident involving Iman's brother, Iman clarified that his brother was the only member of his family who was shot, he fled from the scene, and he was not struck by a bullet. Because the government did not press Iman for any additional details about the shootings Iman referenced—such as, for example, the identities of the other members of his clan who were shot—it is unclear what further detail Iman should have provided. The BIA does not explain, and we fail to see, how this exchange illustrates unresponsiveness, undetailed testimony, or a lack of candor on Iman's part.

Tellingly, the government does not cite the above-mentioned testimony in its brief, much less argue that such testimony supports the agency's adverse credibility decision. The government instead points to a different portion of Iman's testimony concerning how members of the Habr

Gedir clan forced him to work. According to the government, this testimony is an example of Iman "repeating his underlying claim without the details." We are not convinced.

The problem with the government's argument is twofold. First, the relevant testimony simply doesn't support its position. In reply to nearly identical questions from his own counsel, Iman gave responsive, consistent, and detailed answers. Iman first explained he was forced to work as a slave because he was born into the Madhiban clan, which is small and outnumbered by the larger Habr Gedir clan. After testifying that members of the Habr Gedir clan would come to his house, take him and his family to farms, and force them to work, Iman recounted a specific incident during which he was beaten. During this same exchange, Iman added that Habr Gedir clan members forced him to travel to the farms at gunpoint.

We cannot discern from this testimony or elsewhere in the record what further detail Iman was expected to provide during this line of questioning. In any event, the government's reliance on this testimony is flawed for a more fundamental reason: neither the IJ nor the BIA referenced this testimony in their respective decisions. *See Shrestha*, 590 F.3d at 1044 ("For each factor forming the basis of an adverse credibility determination, the IJ should refer to specific instances in the record that support a conclusion that the factor undermines credibility."). This testimony therefore cannot support the agency's adverse credibility decision.

At the end of the day, both the IJ and BIA failed to identify any instance during the merits hearing where Iman either refused to answer a direct question or declined to provide requested details regarding his persecution in

Somalia.  Our review of the record, moreover, revealed no such instance.  Rather, the record shows that Iman gave responsive and detailed answers about, among other things, how members of the Habr Gedir clan enslaved him, forced him to farm various crops, beat him, and killed his brother.  Thus, to the extent the BIA relied on the IJ's findings that Iman's testimony was nonresponsive or undetailed, we conclude that substantial evidence does not support the adverse credibility determination.

2.

The BIA also based its adverse credibility decision on an omission it characterized as an "inconsistenc[y] between some of [Iman's] testimony and the evidence in the record." "Most significantly," the BIA noted, Iman omitted from his asylum application information about his sisters' rapes, which he had previously disclosed to immigration officials during his credible fear interview.  To resolve whether Iman's failure to include this information in his application supports the agency's adverse credibility determination, we first clarify the principles that govern credibility findings based on omissions.

Omissions need not go to the heart of a claim to be considered when evaluating an applicant's credibility under the REAL ID Act, but they must still be weighed in light of the totality of the circumstances and all relevant factors.  *See Shrestha*, 590 F.3d at 1044; *accord* 8 U.S.C. § 1158(b)(1)(B)(iii).  The REAL ID Act, moreover, neither gives IJs free rein nor erases the agency's obligation to "provide specific and *cogent* reasons supporting an adverse credibility determination."  *Shrestha*, 590 F.3d at 1042 (emphasis added).  Thus, although an IJ may rely on omissions when evaluating an applicant's credibility, not all omissions will deserve the same weight or support an

adverse credibility finding. *Compare Silva-Pereira*, 827 F.3d at 1185 (noting that "an adverse credibility determination may be supported by omissions that are not 'details,' but new allegations that tell a 'much different—and more compelling—story of persecution than [the] initial application'" (quoting *Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011))), *with Lai*, 773 F.3d at 973–74 (reversing an adverse credibility determination based on omissions because the omitted information was supplemental rather than contradictory, concerned harms against third parties, and was not volunteered by the applicant in support of his claims).

Consistent with these principles, we have recognized that, in general, "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony." *Lai*, 773 F.3d at 971. It is also well established in this circuit that "the mere omission of details is insufficient to uphold an adverse credibility finding." *Id.* (quoting *Singh v. Gonzales*, 403 F.3d 1081, 1085 (9th Cir. 2005)). A collateral or ancillary omission that, under the totality of the circumstances, has no tendency to suggest an applicant fabricated her or his claim is likewise insufficient to support an adverse credibility determination. *See Shrestha*, 590 F.3d at 1044 (noting that "trivial inconsistencies that . . . have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination"); *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000) ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." (cleaned up)).

Although we would never characterize the rapes that Iman's sisters suffered as trivial or minor, the omission of this information from *Iman's* asylum application, considered

under the totality of the circumstances, does not support the agency's adverse credibility determination.  For starters, the omitted information concerned "adverse consequences for third parties, not for [Iman] himself."  *Lai*, 773 F.3d at 973 (explaining that omissions did not undermine the petitioner's credibility because they concerned his "fellow church member's detention and his wife's arrest").   "Because asylum claims ordinarily are centered around events and circumstances that the applicants have experienced directly," Iman's failure (or decision not) to mention the sexual violence against his sisters in his application for relief is less probative of his credibility.  *Id.* at 973–74.

What's more, the omitted information was not *inconsistent* with the statements in Iman's asylum application, his direct testimony, or any other evidence in the record.  The additional information supplemented rather than contradicted Iman's account of the forced labor and violence he and his family endured in Somalia based on clan membership.  *See id.* at 973.   "This is not a case where contradictory or even impeaching information came out; rather, it was information consistent with [Iman's] own claimed experiences that would have helped his claim had he brought it out himself."  *Id.* at 974.

Nor is this a case where an applicant volunteered new information at the merits hearing in an effort to buttress his claims through eleventh-hour testimony.  *See Zamanov*, 649 F.3d at 971 (upholding adverse credibility finding based on omissions where additional incidents "materially altered [the petitioner's] entire story in a way that cast doubt on his credibility").  Iman's testimony about his sisters' rapes was extremely brief—accounting for less than a single page of the hearing transcript—and was elicited through cross-examination from the government.  *See Lai*, 773 F.3d at 973

(finding it implausible an applicant would seek to bolster a claim only through responses to government questioning). It strains credulity to think Iman wouldn't have mentioned his sisters' rapes on direct examination if he was trying to artificially bolster his claims, especially because he had previously disclosed this information during his credible fear interview.

The last point deserves some elaboration and qualification. In the context of credibility determinations, the principal danger we associate with omissions are last-minute attempts to use new allegations to artificially enhance claims of persecution. *See Silva-Pereira*, 827 F.3d at 1185–86; *Lai*, 733 F.3d at 973. That danger is particularly acute where newly introduced information contains allegations crucial to establishing the applicant's central claim. *See Silva-Pereira*, 827 F.3d at 1186 (citing *Kin v. Holder*, 595 F.3d 1050, 1057 (9th Cir. 2010)).

Put differently, omissions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, and typically weaker, asylum application. *See Zamanov*, 649 F.3d at 974. In *Zamanov*, for instance, the IJ based an adverse credibility determination on the applicant's "suspicious" decision to bring up "incidents [that] would have added great weight to his claim of political persecution[] only *after* his unsuccessful appearance before the asylum officer." *Id.* (emphasis added). That danger is not present in this case. Iman first disclosed the information about his sisters' rapes in his asylum interview and later omitted it from his asylum application and his direct testimony.

When assessing credibility, IJs and the BIA must distinguish between innocuous omissions that don't bear on an applicant's veracity, on the one hand, and omissions that

tend to show an applicant has fabricated her or his claim, on the other hand. Here, the IJ and the BIA erred by relying on an omission that has no tendency to show Iman fabricated his claims of persecution when considered in light of the totality of the circumstances. Given Iman's prior disclosure, the nature of the omitted information, and how the additional information was elicited at the merits hearing, the sole omission the agency identified in this case does not support its adverse credibility decision.

Because Iman's omission, standing alone, cannot support the agency's adverse credibility determination, we need not address whether he gave a reasonable and plausible explanation for the omission or whether the IJ addressed his explanation in a reasoned manner. *Cf. Zhi v. Holder*, 751 F.3d 1088, 1092–93 (9th Cir. 2014) (noting that an IJ must consider explanations for inconsistencies that "form the basis of an adverse credibility determination").

## III.

In sum, we hold that substantial evidence does not support the agency's adverse credibility determination. The BIA's decision affirming the IJ's denial of relief turned on the erroneous adverse credibility finding. Stated differently, the BIA did not consider whether, if Iman were deemed credible, he would have established eligibility for asylum, withholding of removal, or protection under the CAT. Because the agency's adverse credibility determination is not supported by substantial evidence, we remand for consideration of whether, accepting Iman's testimony as credible, he is entitled to relief.[2] *See Lai*, 773 F.3d at 976.

_____

[2] The government argues that Iman has waived any challenge to the agency's denial of CAT protection by failing to raise the issue in his

We therefore grant Iman's petition and remand all three of his claims to the BIA for further proceedings consistent with this opinion.

**Petition for Review GRANTED; REMANDED**.

---

opening brief.  This argument is flawed for two reasons.  First, as we explained above, the BIA's decision upholding the IJ's denial of CAT protection turned on the erroneous adverse credibility determination, which Iman has challenged in his brief.  Second, in his brief, Iman specifically asks this court to remand for consideration of his "claim of asylum, withholding of removal and *protection under the Convention Against Torture*" in light of his credible testimony.  Pet'r's Opening Br. at 14 (emphasis added).  We thus reject the government's waiver argument.