NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 22 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MIN RAJ NEUPANE,<br><br>        Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>        Respondent. | No.   16-72566<br><br>Agency No. A099-910-412<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 2, 2021
San Francisco, California

Before: BALDOCK,[**] WARDLAW, and BERZON, Circuit Judges.

Min Raj Neupane seeks review of a final order of the Board of Immigration Appeals (BIA) dismissing Neupane's appeal of an Immigration Judge's (IJ's) denial of his application for asylum. We reverse and remand for further proceedings.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Bobby R. Baldock, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

We review adverse credibility determinations for substantial evidence. *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020). Although this review is deferential, we require adverse credibility determinations to be supported by "specific and cogent reasons" considered "in light of 'the totality of the circumstances.'" *Id.* at 1064, 1065 (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010)). Where, as here, the BIA issues a decision that adopts part of the IJ's reasoning, we review the reasons "explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's . . . decision in support of those reasons. . . . [W]e do not review those parts of the IJ's adverse credibility finding that the BIA did not identify as 'most significant.'" *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008)).

Here, the BIA relied on only two aspects of the IJ's adverse credibility determination: asserted inconsistencies between Neupane's oral testimony and the passport pages included in the record, and in Neupane's testimony regarding when he received a letter confirming his membership in the Tarun Dal. On review of the record and the IJ opinion, neither of these reasons support an adverse credibility determination.

1. First, the presence of Iran entry stamps, and the "lack of any stamps [on the passport pages submitted] showing [Neupane's] entry or exit into Dubai," do

not support an adverse credibility determination. When asked where he had travelled on his current passport, Neupane responded that he had travelled to Dubai and Iran. This statement was consistent with his previous testimony, in which he stated that he had travelled only to Qatar and perhaps India on a previous, expired passport. Although the BIA opinion states that Neupane mentioned Iran only after the Department of Homeland Security (DHS) lawyer submitted into evidence the passport pages showing stamps for Iran, the transcript shows otherwise: the Iran-stamped pages were submitted after, not before, Neupane stated that he had travelled to Iran on his new passport.[1] Nor does the record indicate that Neupane specifically omitted evidence of his travel to Iran from the documentary record. He initially submitted only those pages of his passport showing his identifying information and United States entry visa, excluding *all* other stamped pages.

This original, limited submission of passport pages only to show identity and arrival in the United States also explains the absence of Dubai entry stamps in the record. At the hearing, the government attorney, who had access to Neupane's entire passport, stated that she had omitted some *stamped* passport pages from the record because she deemed them not relevant. Given Neupane's testimony that the

---

[1] Neupane brought up his travel to Iran after the government's attorney had reviewed Neupane's passport and stated her intent to ask about it (but before submitting any pages into evidence). This sequence of events was not cited by the BIA as a basis for its adverse credibility determination or even noted in its opinion.

two places he went on the new passport from Nepal (aside from the United States) were Dubai and Iran, those stamps could have shown travel to Dubai. Contrary to a statement in the BIA opinion, Neupane was *not* asked by the DHS attorney why there were no Dubai stamps for the period in question. At no point in the hearing proceedings did that attorney or the presiding IJ—who was not the same IJ who authored the opinion—suggest that there was any doubt as to whether Neupane had traveled to Dubai, as he had testified. Indeed, the only reason raised by the government and suggested by the presiding IJ for reaching an adverse credibility determination concerned Neupane's return visit to Nepal in 2006—a reason expressly not relied on by the BIA.

The BIA's factual errors concerning whether the record establishes the absence of Dubai stamps in the passport, whether Neupane was asked about any such gap, and whether Neupane mentioned his Iran trip after, rather than before, the DHS submitted evidence of that trip, greatly undermine the Board's conclusion that Neupane's testimony was not credible as to whether he went to Dubai during the relevant period. *See Iman*, 972 F.3d at 1062. In light of those errors, the conclusion was not based on substantial evidence.

2. The remaining reason relied on by the BIA for affirming the adverse credibility determination is an asserted inconsistency in Neupane's testimony regarding the timing of when he received a letter affirming his membership in

4

Tarun Dal. Neupane submitted two letters from Nepalese political organizations: one from the Nepali Congress, a large political party, and one from Tarun Dal, the youth wing of the Nepali Congress. Both letters were issued in 2009. Neupane also submitted a Tarun Dal membership card, issued in 2005. When the IJ asked Neupane how he obtained the Tarun Dal letter, he responded that he "got it through mail because I contacted in Nepal," and that his sister had mailed the letter to him from his house in Nepal. The judge then asked Neupane *when* he obtained the letter, and the following exchange ensued:

COURT: But when did you obtain the letter from the office?

NEUPANE: This happened long time ago. I can't— I'm not sure I remember.

COURT: So before you left Nepal?

NEUPANE: Yes, I believe so.

COURT: Okay. Just to be sure. Before you left Nepal?

NEUPANE: Yes.

COURT: I'm asking the question, sir, because the letter—the date on the letter seems to be August 21st, 2009. Can you explain?

NEUPANE: So my sister went and then all the party people that Min Raj - how long Min Raj has been in party - been a member of the - being a member. And because I may, I may need as an evidence, I had asked my sister to bring - send these documents.

When further pressed by the IJ, Neupane stated that he "made a mistake" when he stated that he obtained the letter before he left Nepal.

5

Considered in the totality of the circumstances, this testimonial sequence cannot alone support an adverse credibility determination. *See Iman*, 972 F.3d at 1065. The only inconsistency in Neupane's testimony concerns *when* he requested a particular letter, the one from Tarun Dal. He had earlier testified as to another letter concerning his membership in the party, stating that his sister obtained it, not from the documents Neupane had left in his house, but by going to the organization's office and requesting it. When first asked by the IJ when he obtained the Tarun Dal letter, he said he could not remember; it was the IJ who suggested that it was before Neupane left Nepal, and Neupane tentatively agreed— "Yes, I believe so." Only when pressed further was Neupane more definite, and then, once more, only by agreeing with what the IJ said, not by stating the sequence himself.

Throughout the questioning, Neupane consistently testified that his sister sent him the letters from Nepal. The government does not contend, nor does anything in the record suggest, that the documents are fraudulent or that Neupane was not a member of Tarun Dal. Neupane's assertion that he was a member of a non-Maoist party is supported by other documentary evidence in the record, including the letter issued by the Nepali Congress and a Tarun Dal membership card issued in 2005.

Given Neupane's earlier testimony regarding how the Nepali Congress letter

was obtained, his later explanation as to the Tarun Dal letter reduces to confusion as to whether his sister obtained one or two letters after he left by going to an organization's office to request the letter. Neupane did not simply manufacture a scenario on the spot in which his sister so obtained a letter concerning his political activities.

On the record as a whole, and given the peripheral pertinence of the minor discrepancy to Neupane's overall testimony, this evidence does not supply sufficient evidence to support the IJ's adverse credibility determination.[2]

3. Because the BIA affirmed the IJ's adverse credibility determination, the Board did not reach the remaining issues in Neupane's asylum and withholding claims. We therefore remand for consideration of whether, accepting his testimony as credible, Neupane is entitled to asylum or withholding of removal.

4. The BIA did not err in affirming the IJ's holding that Neupane was not entitled to relief under the Convention Against Torture. Neupane bears the burden of showing that it is "more likely than not" he will be tortured if returned to Nepal. 8 C.F.R. § 1208.16(c)(2). Substantial evidence supports the IJ's conclusion that conditions in Nepal have considerably changed such that Neupane has failed to carry his burden. According to the U.S. Department of State's 2013 Human Rights

---

[2] Because the BIA did not rely on Neupane's return trips to Nepal in affirming the IJ's credibility determination, we do not review that portion of the IJ's opinion. *Lai*, 773 F.3d at 970.

Report on Nepal: the country has remained at peace for over a decade since the end of the civil war, the Maoist party now competes in "essentially free and fair elections," at least for the Constituent Assembly, and the "number and severity of [violent] incidents decreased markedly following the end of the Maoist insurgency in 2006." While Neupane contests the accuracy of reports of generally improved conditions in Nepal, he has presented no evidence that he as an *individual* is more likely than not to be tortured.

**GRANTED in part, DENIED in part,** and **REMANDED**