NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YASH PAUL,<br><br>                Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>                Respondent. | No.   16-72596<br><br>Agency No. A206-186-030<br><br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 15, 2021**
San Francisco, California

Before: PAEZ and FRIEDLAND, Circuit Judges, and KORMAN,*** District Judge.

Yash Paul, a native and citizen of India, petitions for review from a decision

of the Board of Immigration Appeals ("BIA") upholding the denial of his claims

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

Paul alleges that he was arrested and beaten three times by the police in India. According to Paul, he was attacked because the police erroneously believed that he was involved in the violent Naxalite movement and because he belonged to a lower caste.

The Immigration Judge found Paul to be not credible. The BIA relied upon three inconsistencies in affirming the adverse credibility determination, each of which is supported by substantial evidence. *See Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) ("When it comes to questions of fact . . . a reviewing court must accept 'administrative findings' as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B))).

1. The BIA cited an inconsistency between Paul's testimony and his wife's supporting affidavit in their descriptions of the medical care he received after the alleged beatings. Paul testified that he went to see a doctor after the first and third beatings, but not the second. His wife's affidavit, however, indicates that Paul received medical treatment after his second beating; it does not mention any treatment after the first or third beating. Paul attempted to explain this apparent

2

inconsistency between his testimony and his wife's affidavit by saying that she had made a "mistake or, you know, I don't know about that." Given Paul's testimony that his wife accompanied him when he sought medical treatment after the third beating, a reasonable factfinder would not be compelled to accept this explanation.

Paul argues that, at least as to the third incident, the discrepancy is a mere omission on his wife's part, not an inconsistency, which does not undermine his credibility. Treating this discrepancy as an omission rather than an inconsistency would not alter our conclusion. *See Iman v. Barr*, 972 F.3d 1058, 1068 (9th Cir. 2020) ("[O]missions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, and typically weaker, asylum application." (citing *Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011)). Substantial evidence therefore supports this ground for the adverse credibility determination.

2. The BIA cited an inconsistency between Paul's testimony about the medical treatment he received after the third beating and the documentary evidence in the record. Paul testified that he was treated by a doctor for a single day and was given ten days' worth of medicine. According to the doctor's note in the record, however, Paul was treated for three days. Paul was not able to explain this contradiction, and the BIA reasonably relied on it in upholding the adverse credibility determination.

3. The BIA cited an inconsistency as to whether Paul was attacked because

of his purported involvement with the Naxalites, because of his low caste, or both.[1] Paul's original declaration stated only that the police beat and threatened him because of his purported involvement with the Naxalites. He later submitted a supplemental statement asserting that the police mentioned his caste during each of his arrests, and that "[t]he police believe that low caste people are supporting the Naxalites." By contrast, his wife's affidavit states that Paul's beatings were "due to [his] race and ethnicity and our lower cast[e]." The affidavit does not mention any purported involvement with the Naxalites.

On cross-examination, Paul offered various explanations for this inconsistency. He first asserted that his wife omitted the Naxalites from her affidavit because she "doesn't really know who they are," but he then confirmed that his wife knew that he was accused of being a Naxalite. He then suggested that the notary might have refused to prepare the affidavit had it mentioned the Naxalites. Later, he indicated that he had not told his wife about the Naxalite accusations, but this statement was contradicted by other portions of his testimony. Ultimately, Paul concluded that his wife knew about the accusations, "but why she

---

[1] The term Naxalite is a "general designation given to several Maoist-oriented and militant insurgent and separatist groups that have operated intermittently in India since the mid-1960s. More broadly, the term—often given as Naxalism or the Naxal movement—has been applied to the communist insurgency itself." Kenneth Pletcher, *Naxalite*, Encyclopedia Britannica, https://www.britannica.com/topic/Naxalite.

didn't mention it, I do not know."  A reasonable factfinder would not be compelled to credit these shifting explanations, which means that substantial evidence supports this basis for the adverse credibility determination as well.

Without Paul's testimony, the remaining record evidence is insufficient to support his claims for relief, so we deny the petition for review.  *Yali Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).  Although "a CAT applicant may satisfy his burden with evidence of country conditions alone," *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010) (citing *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001)), the record evidence here does not compel the conclusion that it is more likely than not that Paul would be tortured in India.

**PETITION DENIED.**